**CARIBBEAN ATLANTIC AIRLINES, INC., Plaintiff,**

v.

**LEEWARD ISLANDS AIR TRANS- PORT, Defendant.**

**Civ. A. No. 237-66.**

United States District Court
D. Puerto Rico.

June 12, 1967.

Fiddler, González & Rodriguez, and Robert C. Lester, San Juan, P. R., for plaintiff.

McConnell, Valdés, Kelley & Sifre, San Juan, P. R., Condon & Forsyth, New York City, for defendant.

## OPINION

CAFFREY, District Judge [*]

This is a civil action in which plaintiff (hereafter CARIBAIR) seeks to permanently enjoin defendant (hereafter LIAT) from engaging in foreign air transportation without a foreign air carrier permit, an accounting of LIAT'S revenue from passenger and property carriage, and money damages. Jurisdiction of this court is invoked on the basis of 28 U.S.C.A. § 1332 and 48 U.S.C.A. § 863. Both parties are air carriers of passengers and property, CARIBAIR being a corporation organized under the laws of the Commonwealth of Puerto Rico with a principal place of business in Carolina, Puerto Rico, and LIAT being a corporation organized under the laws of Antigua, British West Indies, a colony of the United Kingdom, with a principal place of business in Antigua.

Plaintiff is an air carrier authorized to engage and engaging in interstate, overseas and foreign air transportation of persons, property, and mail, pursuant to a certificate of public convenience and necessity, and exemptions, issued to it by the Civil Aeronautics Board (hereafter CAB), covering flights between San Juan, Puerto Rico; St. Thomas and St. Croix, Virgin Islands; St. Maarten, Netherlands West Indies; Guadelupe, French West Indies; and St. Kitts, British West Indies.

Defendant is a foreign air carrier engaging in foreign air transportation of persons and property between San Juan, Puerto Rico; St. Thomas, Virgin Islands; St. Kitts and Antigua, British West Indies; Guadelupe, French West Indies; and St. Lucia, British West Indies. LIAT holds no foreign air carrier permit or other documentation from the CAB relative to flights to or from San Juan, St. Thomas, or any other point in the United States, Puerto Rico, or any Territory of the United States.

The complaint charges that LIAT'S operating between the above-named points is illegal, because it is performed without the certificate required by section 402 of the Federal Aviation Act of 1958 (49 U.S.C.A. § 1372(a)), and that as a consequence of LIAT'S illegal competition with it CARIBAIR has lost the revenue it would have received in handling whatever volume of passengers and cargo defendant has handled between the various places enumerated.

LIAT moved to dismiss the complaint on the grounds (1) that the Federal Aviation Act confers exclusive jurisdiction of the subject matter of the complaint upon the CAB, (2) that CARIBAIR'S failure to exhaust administrative remedies before the Board preclude the granting of injunctive relief, (3) that the issues raised by the complaint and answer are within the exclusive primary jurisdiction of the CAB, and (4) that the claim for money damages is without merit as a matter of law.

* Sitting by designation.

The motion to dismiss was orally argued and briefed by the parties.

I. Does a Private Civil Action Lie in a United States District Court to Enforce Section 402(a) of the Federal Aviation Act?

The Federal Aviation Act of 1958 makes a sharp distinction between certificates of public convenience and necessity issued to domestic carriers for operation of domestic routes on the one hand, and certificates of public convenience and necessity referred to as "foreign air carrier permits" issued to foreign air carriers for operations in international air transport with points of departure and arrival in the United States, its Territories, or possessions. It is true that both sections 401(a) and 402(a) of the Act (49 U.S.C.A. §§ 1371(a) and 1372(a)), which respectively refer to domestic and foreign air carriers, have generally similiar provisions on their face. 49 U.S.C.A, § 1371 (a) provides:

"No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."

49 U.S.C.A. § 1372(a) provides:

"No foreign air carrier shall engage in foreign air transportation unless there is in force a permit issued by the Board authorizing such carrier so to engage."

It is highly significant, however, to note that the statute authorizing judicial enforcement of the Federal Aviation Act, section 1007(a) of that Act (49 U.S.C.A. § 1487(a)), makes clearly distinct provisions for the judicial enforcement of the two above-quoted sections. It provides:

"If any person violates any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit issued under this chapter, the Board or Administrator, as the case may be, their duly authorized agents, *or, in the case of a violation of section 1371(a) of this title, any party in interest*, may apply to the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred, for the enforcement of such provision of this chapter, or of such rule, regulation, requirement, order, term, condition, or limitation; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining such person, his officers, agents, employees, and representatives, from further violation of such provision of this chapter or of such rule, regulation, requirement, order, term, condition, or limitation, and requiring their obedience thereto." (Emphasis added.)

The plain language of section 1487(a) precludes a private litigant from resort to the jurisdiction of a United States district court for the purpose of prosecuting a civil action to enforce the provisions of 49 U.S.C.A. § 1372(a), since the statute provides that only the CAB or the Administrator may apply to the district court for the enforcement of any provision of this chapter, or any rule, regulation, requirement or order thereunder. Thus, the statute expressly provides for *public* enforcement of all violations of the chapter which contains both sections §§ 1371 and 1372. However, an express exception is made to the above-stated general rule, solely with respect to violations of section 1371(a), to the effect that in the *case of a violation of that section,*

"*any* party in interest, may apply to the district court of the United States * * * for the enforcement of such provision of this chapter, or of such rule, regulation, requirement, order * * *." (Emphasis added.)

This statutory language, on the basis of the well-accepted canon of statutory construction, *expressio unius est exclusio alterius*, amounts to a congressional declaration that a private right of action is available to those who claim they are being or have been damaged by violations of 49 U.S.C.A. § 1371(a), and that such

private right of action is withheld from those who allege injury by reason of violations of section 1372(a).

The withholding by Congress of a private right of action for violations of section 1372(a) is also indicated by the provisions of Section 1006(a) of the Act, 49 U.S.C.A. § 1486(a), which provides in pertinent part:

"Any order, affirmative or negative, issued by the Board or Administrator under this chapter, *except any order in respect of any foreign air carrier subject to the approval of the President* as provided in section 1461 of this title, shall be subject to review by the courts of appeals of the United States * * *" (Emphasis added.)

Section 1461 of Title 49 provides in pertinent part:

"The issuance, denial, transfer, amendment, cancellation, suspension, or revocation of, and the terms, conditions, and limitations contained in, any certificate authorizing an air carrier to engage in overseas or foreign air transportation, or air transportation between places in the same Territory or possession, or any permit issuable to any foreign air carrier under section 1372 of this title, shall be subject to the approval of the President."

From the foregoing two sections it is clear that Congress deliberately withheld from judicial review orders dealing with foreign air carriers, subjecting them to presidential approval rather than to judicial review, and this removal from judicial review of cases arising under section 1372 is a strong indication that Congress deliberately removed such cases from private enforcement through the medium of its wording of section 1487(a) quoted above.

The Supreme Court has noted the validity and the importance of the considerations which underlie the congressional decision to remove matters affecting foreign air commerce from judicial control. In Chicago & Southern Air Lines v. Waterman Steamship Corp., 333 U.S. 103,

68 S.Ct. 431, 92 L.Ed. 568 (1948), the Court observed:

"The 'public interest' that enters into who in effect obtain also a sponsorship awards of routes for aerial carriers, by our government in foreign ventures, is not confined to adequacy of transportation service * * * That aerial navigation routes and bases should be prudently correlated with facilities and plans for our own national defenses and raise new problems in conduct of foreign relations, is a fact of common knowledge. * * *" (p. 108, 68 S.Ct. p. 434)

\* \* \* \* \* \*

"But when a foreign carrier seeks to engage in public carriage over the territory or waters of this country * *, Congress has completely inverted the usual administrative process. Instead of acting independently of executive control, the agency is then subordinated to it." (p. 109, 68 S.Ct. p. 435)

\* \* \* \* \* \*

"The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports neither are nor ought not to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret. * * * Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative. * * *" (p. 111, 68 S.Ct. p. 436)

It is clear, on the reasoning of the *Chicago & Southern Air Lines* case, that the same policy considerations enumerated by the Court in that opinion preclude private enforcement of the type sought herein, which would just as surely trench upon the foreign relations of the United States and the reciprocal agreements made between the United States and the United Kingdom and Trinidad/Tobago, as would judicial review of the order involved in the *Chicago & Southern Air*

*Lines* case. I am persuaded that Congress, in enacting section 1487(a) of Title 49, intentionally restricted judicial enforcement of any alleged violation of section 1372(a) to those situations in which the CAB elects to seek district court relief. For precedent, under the Motor Carrier Act, see Consolidated Freightways v. United Truck Lines, 216 F.2d 543 (9th Cir. 1954), cert. denied 349 U.S. 905, 75 S.Ct. 582, 99 L.Ed. 1242.

II. Does Plaintiff's Failure to Exhaust Available Administrative Remedies Preclude its Seeking and Obtaining Injunctive Relief?

■ Assuming (contrary to the ruling contained in Part I hereof) that a private litigant may bring suit in a federal district court to litigate alleged violations of 49 U.S.C.A. § 1372(a), the next question which must be resolved is whether a plaintiff's failure to take advantage of available administrative remedies disables that plaintiff from seeking prospective injunctive relief. Sections 411, 1002, and 1007 of the Federal Aviation Act of 1958, 49 U.S.C.A. 1381, 1482, and 1487, set out at substantial length a broad and comprehensive scheme for the investigation by the Board of alleged violations of any provisions of the Act. Investigations may be commenced on motion of the Board or on complaint of any person, and the Board is authorized to "compel" by issuance of an "appropriate order" compliance with "any provision of the Act" by "any person." The Board is authorized *inter alia* to issue cease and desist orders if it determines that any foreign air carrier has been or is engaged in any unfair or deceptive practice, or unfair method of competition. (49 U.S.C.A. § 1381) As indicated supra, section 1007 of the Act provides that the Board may seek judicial enforcement of its orders. Thus it is clear that the prospective relief that plaintiff seeks herein is administratively available from the Board, and it is equally clear that it is hornbook law, and a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938).

■ The availability of an adequate administrative remedy as to the prospective relief sought by plaintiff herein in its quest for an injunction amounts to the availability of an adequate remedy at law which, in turn, precludes the granting of the injunctive relief sought. Wills v. Trans World Airlines, Inc., 200 F. Supp. 360, 366 (S.D.Cal.1961).

If the instant case can be construed as one seeking declaratory rather than injunctive relief, the same rationale applies. Cf. St. Germaine v. Alamo Truck Lines, 252 F.2d 10 (5th Cir. 1958); First Savings and Loan Ass'n of Bahamas v. S.E.C., 358 F.2d 358 (5th Cir. 1966).

III. Does a Common Law Cause of Action Exist for the Wrong Complained of?

Again assuming (contrary to the ruling contained in Part I hereof) that a private litigant may bring suit in a federal district court to litigant alleged violations of 49 U.S.C.A. § 1372(a), the further question to be resolved is whether or not a common law cause of action for money damages exists for tortious interference with a franchise granted through the issuance of a *foreign* air carrier permit and, if so, does the savings clause, 49 U.S.C.A. § 1506, allow private litigation to enforce it.

■■ Jurisdiction of this court is invoked on the basis of divresity of citizenship and, to some extent, under the provisions of the Federal Aviation Act. With reference to the law of Puerto Rico, to which this court sitting in a diversity action must look, plaintiff has cited to the court no case or precedent giving rise to any cause of action for the type of competition allegedly involved herein. Plaintiff likewise has cited no section of the Federal Aviation Act which provides for its recovery of money damages upon the basis of the allegations of the instant com-

plaint. Defendant on the other hand points to S.S.W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F.2d 658 (1951), cert. denied 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355, which characterized the Federal Aviation Act as "a statute which conspicuously makes no provision for damages." (p. 664) This construction against the present existence of any private common law cause of action for money damages, if one ever existed, finds support in the fact that Congress withheld any private remedy for alleged violation of Section 402(a) of the Act (49 U.S.C.A. § 1372(a)), as developed more fully in Part I of this opinion.

IV. Are the Issues Herein Within the Exclusive Primary Jurisdiction of the Civil Aeronautics Board?

The final matter to be considered (again by making an assumption contrary to the ruling contained in Part I hereof) is the effect of the so-called doctrine of primary jurisdiction on plaintiff's right to resort to this court. Among the issues to be resolved here are those of whether or not the concededly air-carrier operations of defendant constitute (1) a carriage, (2) by it as a common carrier, and (3) in commerce. The resolution of these seemingly simple issues in turn involves a determination of whether or not LIAT is controlled and dominated by British West Indian Airways (BWIA), or whether it is operating independently, whether a holding out of the availability of the services of LIAT is made by it on the one hand or by BWIA on the other hand, whether or not so-called "wet leases," i. e., lease of an aircraft complete with crew, constitute operations by LIAT on the one hand or by BWIA on the other hand, and a determination as to whether LIAT is operating publicly as a common carrier or privately under a long term contract with BWIA. While possibly in some contexts determinations of this type might be ruled to be appropriate for a court, as distinguished from an administrative agency, such would not seem to

be the case here in view of the complexities going to the ownership of LIAT on the one hand and the citizenship of the different entities involved in that ownership in different layers and percentages, as more fully appears from the Order, No. E-22815, filed as Attachment A to the memorandum of law filed on behalf of plaintiff.

 Assuming once again, contrary to the rulings made in earlier parts hereof, that a private cause of action exists for a section 1372(a) violation. I rule that on the basis of the principle of "primary jurisdiction," this matter then should be first be resolved by the Board. Cf. Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952), and Briggs Transfer Co. v. National Butter Co., 199 F.2d 847 (8th Cir. 1952); World Airways, Inc. v. Northeast Airlines, Inc., 349 F.2d 1007 (1st Cir. 1965), cert. denied 382 U.S. 984, 86 S.Ct. 561, 15 L.Ed.2d 473, is not to the contrary being distinguishable on its facts.

For each of the above-stated four reasons the complaint must be dismissed.

Judgment accordingly.