Sandra EISMAN et al., and David Eisman, a minor, et al., by his parent and natural guardian, Sandra Eisman et al.

v.

PAN AMERICAN WORLD AIRLINES et al.

Civ. A. No. 71–2024.

United States District Court,
E. D. Pennsylvania.

Dec. 22, 1971.

Dennis H. Eisman, Needleman, Needleman & Tabb, Philadelphia, Pa., for plaintiffs

Robert Landis, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

Thomas J. Whalen, Condon & Forsyth, New York City, Krusen, Evans and Byrne, Philadelphia, Pa., for defendants British Overseas Airways Corp. and Alitalia Airlines.

## OPINION AND ORDER

TROUTMAN, District Judge.

This is a purported class action, alleging that the student and youth fares of defendant airlines constitute discrimination in contravention of the Federal Aviation Act, 49 U.S.C. § 1374(b) ; and the Civil Rights Act, 42 U.S.C. § 1985(3). Plaintiff, Sandra Eisman, is twenty-eight years old and claims to represent a class of persons over the age of twenty-six who are not students and who have

purchased or will purchase in the future tickets for international air travel. Plaintiff, David Eisman, age two years and seven months, claims to represent a class of persons between the ages of two and twelve years who are not students and who have purchased or will purchase in the future tickets for international air travel. The fourteen defendants are foreign and domestic airlines, engaged in international air passenger transportation between the United States and various cities of Europe and Mexico.

In June of 1971, the Civil Aeronautics Board (C.A.B.) granted Special Tariff Permission Applications by the domestic and foreign air carriers to file student and youth fare tariffs governing international air fares between points in the United States and Europe, as well as Mexico. Each tariff filed by the foreign air carriers was filed pursuant to orders from their respective national governments, while those filed by the domestic air carriers were pursuant to an order of the C.A.B. dated April 15, 1971, Order 71–4–103, Docket 22628, authorizing domestic airlines to establish competitive fares with the foreign airlines. These students and youth fares are substantially less than the regular economy class fares charged by the same airlines. In June of 1971, the Member Carriers of the National Air Carriers Association filed a complaint with the C.A.B. challenging the student and youth fares of some of the defendants. Shortly thereafter, Dennis Eisman, counsel for plaintiffs, wrote the C.A.B. complaining that the student and youth fares constituted unjust price discrimination. To this letter, the C.A.B. responded that it could not deal with the letter as a formal complaint, since copies thereof were not served directly on the named carriers. Plaintiffs thereafter filed suit in this Court, challenging these student and youth fares. On September 1, 1971, subsequent to the filing of plaintiffs' complaint, the C.A.B. instituted an investigation of the fares involved in this action "in order to determine if the youth and student fares at issue do constitute an unjust discrimination".

Plaintiffs' challenge to the student and youth fares is based on two separate grounds. Plaintiffs' first cause of action is based on Section 404(b) of the Federal Aviation Act of 1958, 49 U.S.C. § 1374(b) which provides:

"No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transporation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

In an alternative cause of action, plaintiffs challenge the student and youth fares on the ground that such fares constitute a deprivation of their civil rights under 42 U.S.C. § 1985(3), which provides in pertinent part:

"If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Before the Court are the motions of defendant airlines to dismiss the complaint for lack of jurisdiction over the subject-matter and for failure to state a claim upon which relief can be granted.

## I—*The Class Action*

At the threshold, we must determine the propriety of the class action in this case. Each plaintiff claims to represent separate age groups. Plaintiff, Sandra Eisman, claims to represent all persons over the age of 26 years who are not students, and plaintiff, David Eisman, claims to represent all persons between the ages of 2 and 12 years who are not students. Within each age class, each plaintiff further claims to represent two distinct classes: (1) those who have in the past purchased tickets from the defendant airlines, and (2) those who will in the future purchase tickets from the defendant airlines. We conclude that plaintiffs may not represent either class on two grounds. In the first place, in order to properly institute a class action under Federal Rule of Civil Procedure 23, it is well established that a plaintiff must be a member of the class which he purports to represent. Hall v. Beals, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). In the instant case, no allegation can be found in the complaint that either plaintiff has ever purchased an airline ticket from defendants. Plaintiffs, therefore, cannot maintain a class action on behalf of those who have, in fact, purchased tickets from the defendants. Secondly, as to plaintiffs' claim that they represent those who will purchase tickets from the defendants in the future, we conclude that it is impossible for this Court to determine who or how many plaintiffs would fall within this amorphous class. In order to maintain a class action under Rule 23, the members of a class must be capable of definite. identification as either being in or out of it. Giordano v. R. C. A., 183 F.2d 558 (3rd Cir. 1950). The courts have dismissed class actions where the vague and indefinite description of the purported class depends on the subjective state of mind of a particular individual, rendering it difficult, if not impossible, for the Court to determine whether any given individual is within or without the alleged class. Chaffee v. Johnson, 229 F.Supp. 445, 448 (S.D.Miss.1964), aff'd. 352 F.2d 514 (5th Cir. 1965), cert. denied, 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966). We, therefore, conclude that this action is not properly maintainable as a class action under Rule 23.

A question of plaintiffs' standing to bring this suit arises in that there is no allegation anywhere which suggests that plaintiffs ever actually purchased an airline ticket to Europe or Mexico since the youth fares have been in effect. Since this issue was raised by defendants only superficially, we will undertake to consider their primary arguments.

## II—*The Primary Jurisdiction of the C. A.B.*

The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies. Primary jurisdiction applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. United States v. Western Pacific R. Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

In the cases discussing the doctrine of primary jurisdiction, the courts have emphasized that two policy factors are the underlying bases for its application: (1) the desirable unformity which would obtain if a specialized agency initially passed on certain types of administrative questions, Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); and (2) the expert and specialized knowledge of the agencies involved, Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

The most definitive statement of the policy reasons underlying primary jurisdiction is found in Far East Conference v. United States, *supra*, at 574–575, 72 S.Ct. at 494, where the Supreme Court stated:

"[It is] now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

See also International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman, 401 U.S. 233, 238, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971); United States v. Western Pacific R. Co., 352 U.S. 59, 64–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Whether the necessity for uniformity in international air fares and the administrative expertise of the C.A.B. mandate our referral of this case to that agency for its initial determination and whether the doctrine of primary jurisdiction is applicable require discussion.

### A. *Uniformity*

In the instant case, plaintiffs have proceeded against fourteen airlines, while in the C.A.B. proceeding, that agency has undertaken a comprehensive investigation of the youth fares of all airlines. If this Court were to strike down the student and youth fares of defendants at this point, and the C.A.B. were to subsequently sustain such fares, a divergency of fares charged among the airlines would result. In a similar situation, the Supreme Court directed that primary jurisdiction was vested in the administrative agency, holding that:

"This must be, because, if the power existed in both courts and the Commission to originally hear complaints on this subject, there might be a divergence between the action of the Commission and the decision of a court. In other words, the established schedule might be found reasonable by the Commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible." Texas & Pacific R. Co. v. Abilene Cotton Oil Co., *supra*, 204 U.S. at 441, 27 S.Ct. at 355.

Thus, to properly maintain uniformity of fares among airlines, it is proper for this Court to defer to the C.A.B. for its initial determination as to the fares of all airlines.

### B. *Administrative Expertise of the C.A.B.*

The language of the Federal Aviation Act itself manifests the congressional intent to have the validity of properly filed tariffs determined by the C.A.B. in the first instance. Section 1002(a) of the Act, 49 U.S.C. § 1482(a), provides that any person may file a complaint with the board "with respect to anything done or omitted to be done in violation of the Act." Further, Section 1002(f) of the Act provides:

"Whenever, after notice and hearing, upon complaint, or upon its own initiative, the Board shall be of the opinion that any individual or joint rate, fare, or charge demanded, charged, collected, or received by any air carrier or foreign air carrier for foreign air transportation, or any classification, rule, regulation, or practice affecting such rate, fare, or charge, or the value of the service thereunder, is or will be unjustly discriminatory, or

unduly preferential, or unduly prejudicial, the Board may alter the same to the extent necessary to correct such discrimination, preference, or prejudice and make an order that the air carrier or foreign air carrier shall discontinue demanding, charging, collecting, or receiving any such discriminatory, preferential, or prejudicial rate, fare, or charge or enforcing any such discriminatory, preferential, or prejudicial classification, rule, regulation, or practice." 49 U.S.C. § 1482(f).

It has been established beyond doubt that the resolution of issues involving unreasonable or discriminatory tariffs are within the special competence of the administrative agency. In United States Navigation Co., Inc. v. Cunard Steamship Co. Ltd., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932), the Supreme Court stated at pages 482 and 483, 52 S.Ct. at page 249:

> "The inquiry * * * would necessarily relate to technical and intricate matters of fact, and the solution of the question would demand the exercise of sound administrative discretion. The accomplishment of the purpose of Congress could not be had without the comprehensive study of an expert body continuously employed in administrative supervision. Only through the action of such a body could there be secured the uniformity of ruling upon which appropriate protection from unreasonable exactions and unjust discriminations must depend."

More specifically, cases decided under the Federal Aviation Act have held that the C.A.B. has primary jurisdiction to hear cases challenging properly filed tariffs as unreasonable or unjustly discriminatory. In Lichten v. Eastern Airlines, 189 F.2d 939 (2d Cir. 1951), the Second Circuit, relying on the need for uniformity of rates and services, held at page 941:

> "Under these provisions, and similar provisions of other enactments, it is well settled that questions of the reasonableness of rates and practices are to be left to the administrative agency

in the first instance, and that under the doctrine of 'primary jurisdiction' the provisions of a tariff properly filed with the Board and within its authority are deemed valid until rejected by it."

Further, in Transcontinental Bus System, Inc. v. C. A. B., 383 F.2d 466, 491 (5th Cir. 1967), the Fifth Circuit noted that the question of unjust discrimination is one of fact for determination by the board.

We find that since the gravamen of the plaintiffs' claim is that the student and youth fares are discriminatory, preferential, and prejudicial, this question is squarely within the special competence of the C.A.B. and should be heard by that agency in the first instance. Since the C.A.B. has already undertaken an investigation of such fares, plaintiffs will suffer no delay or prejudice arising from our deference to the board. We will, therefore, dismiss plaintiffs' 49 U.S.C. § 1374(b) cause of action. See Danna v. Air France, 334 F.Supp. 52 (S.D.N.Y. 1971).

### C. *Plaintiffs' Allegations*

 Plaintiffs claim that the doctrine of primary jurisdiction is inapplicable where the complaint charges a violation of the Act, rather than challenging the reasonableness of the rate. For this proposition, plaintiffs rely on C. A. B. v. Modern Air Transport, 179 F.2d 622 (2d Cir. 1950). In that case, the Court held:

> "This doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule. Thus, it has been continuously asserted that courts have original jurisdiction to interpret tariffs, rules and practices where the issue is one of violation, rather than reasonableness." *Id.* at 624.

*Modern Air Transport* is readily distinguishable in that the defendant had violated a regulation promulgated by the C.A.B. and the C.A.B. itself brought the action to enjoin the violation. In the

case at bar, defendants are merely complying with tariffs properly filed with the C.A.B.—there being no allegation of the violation of these tariffs. Thus, it is clear that we are here faced with the question whether the filed tariffs are unreasonable and unduly discriminatory, and not whether these tariffs were violated.

Plaintiffs also rely on a trilogy of cases which hold that Section 1374(b) provides individual passengers with a Federal right to service without undue or unreasonable discrimination and a private cause of action to enforce this right in the Federal Courts. These cases—Fitzgerald v. Pan Am World Airways, 229 F.2d 499 (2d Cir. 1956); Mortimer v. Delta Air Lines, 302 F.Supp. 276 (N.D.Ill.1969); Wills v. TWA, 200 F. Supp. 360 (S.D.Cal.1961)—all involved violations of the currently effective tariffs. In *Fitzgerald*, plaintiff was denied access to a first-class seat and, therefore, was discriminated against because of her race. In both *Mortimer* and *Wills*, the defendant airlines refused to honor a passenger's confirmed reservations because the flight was over-sold. Hence, in those cases, the violation involved services rather than rates, and they also involved violations by the airlines of their own properly filed tariffs. In the instant case, we are concerned with air fares contained in tariffs filed in accordance with C.A.B. regulations. Consequently, these cases are readily distinguishable from the case at bar and do not operate to render this case judicially cognizable in the first instance.

III—*Plaintiffs' Cause of Action under Section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b).*

A. *Section 1374(b) confers no private remedy for injunction.*

Under the statutory scheme of the Federal Aviation Act, except for violations of Section 401(a), only the C.A.B. may apply to the District Court for injunctive relief for violations of the

Act. Section 1007(a) of the Act provides:

"If any person violates any provision of this Act, or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit issued under this Act, the Board or Secretary of Transportation, as the case may be, their duly authorized agents, or, in the case of a violation of Section 401(a) of this Act, any party in interest, may apply to the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred, for the enforcement of such provision of this Act, or of such rule, regulation, requirement, order, term, condition, or limitation; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining such person, his officers agents, employees, and representatives, from further violation of such provision of this Act or of such rule, regulation, requirement, order, term, condition, or limitation, and requiring their obedience thereto." 49 U.S.C. § 1487(a).

Under this section, the courts have held that a private litigant has no right to injunctive relief under the Act. In Caribbean Atlantic Airlines, Inc. v. Leeward Islands Air Transport, 269 F. Supp. 231, 233 (D.P.R.1967), the Court in denying injunctive relief stated:

"The plain language of Section 1487 (a) precludes a private litigant from resort to the jurisdiction of a United States District Court for the purpose of prosecuting a civil action to enforce the provisions of 49 U.S.C.A. § 1372 (a), since the statute provides that only the CAB or the Administrator may apply to the district court for the enforcement of any provision of this chapter, or any rule, regulation, requirement or order thereunder. Thus, the statute expressly provides for pub-

lic enforcement of all violations of the chapter which contains both §§ 1371 and 1372."

Further, both Mortimer v. Delta Air Lines, *supra*, and Wills v. Transworld Airlines, Inc., *supra*, on which plaintiffs rely, specifically held that there was no basis for injunctive relief upon the complaint of a private litigant for a violation of Section 404(b) of the Act, 49 U.S.C. § 1374(b). We, therefore, conclude that plaintiffs, as private litigants, are precluded from seeking injunctive relief under the Act.

B. *Plaintiffs have failed to exhaust their administrative remedies.*

 The administrative procedures established under the Act provide that a complaint may be filed with the C.A.B. challenging anything done in contravention of the Act, either on the C.A.B.'s own initiative, 49 U.S.C. § 1482(f), or by any person, 49 U.S.C. § 1482(a). The Act further provides that any order, affirmative or negative, issued by the board shall be subject to review by the United States courts of appeals upon petition by any person disclosing a substantial interest in such order. 49 U.S.C. § 1486(a). In the instant case, counsel for plaintiff merely wrote a letter to the C.A.B., complaining that the student and youth fares were discriminatory and, therefore, violative of the Act. The C.A.B. replied informing counsel that because of the failure to serve copies on the named carriers, the board could not consider the letter a formal complaint, but would, nevertheless, file it with the papers in the record of the complaint of Member Carriers of the National Air Carrier Ass'n., C.A.B. Docket 23490. At this point, plaintiffs had two alternative courses of action regarding the C.A.B. decision: on one hand, an appeal to the Court of Appeals under Section 1006(a) of the Act, 49 U.S.C. § 1486(a), from the board's failure to treat the letter as a formal complaint, or, on the other hand, the filing of a proper formal complaint which would have made them parties to the current youth fares investigation.

Having failed to follow either alternative, we conclude that plaintiffs have failed to exhaust their administrative remedies. As was stated in Mortimer v. Delta Air Lines, Inc., *supra*, 302 F.Supp. at 282:

"The Federal Aviation Act provides for the filing of a complaint with the administrative agency which has the duty to investigate the matter and, where justified, issue an order compelling future compliance with the provision of the statute. 49 U.S.C. § 1482. In the absence of the exhaustion of the administrative remedy provided by Congress, which includes any appeal of a Board order which must be taken to the United States Court of Appeals, 49 U.S.C. § 1486(a), this Court will not entertain any claim for equitable relief. See Wills v. Trans World Airlines, 200 F.Supp. at 365–366."

C. *Plaintiffs have no action for damages under the Federal Aviation Act.*

 Assuming arguendo that the presently filed student and youth fares were found to be in violation of the Federal Aviation Act, the Act does not contemplate private recovery for past overcharges, even if the tariffs were later found to be unlawful.

In T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), the Supreme Court held that under the Motor Carrier Act, 49 U.S.C. § 301 et seq., Congress did not intend to give shippers a statutory cause of action for the recovery of damages based upon unreasonable rates. Relying on the parallel statutory language between the Motor Carrier Act and the Federal Aviation Act, the courts have held that the latter enactment does not create a basis for the recovery of damages by reason of the imposition of unreasonable rates. Danna v. Air France, 334 F.Supp. 52 (S.D.N.Y.1971). See also Tishman & Lipp, Inc. v. Delta Air Lines, 375 F.Supp. 471, 476–477 (S.D.N.Y.1967), aff'd 413 F.Supp. 1401 (2d Cir. 1969). See also

Moss v. C.A.B., 430 F.2d 891, 898, n. 30 (D.C.Cir. 1970). Consequently, the procedural safeguards provided in the Federal Aviation Act are the plaintiffs' sole defense against unreasonable rates permitted by the C.A.B. We, therefore, conclude since plaintiffs' claim for money damages under Section 404(b) is based on past charges by the carriers under properly filed tariffs, there can be no such recovery.

### IV—*Plaintiffs' Claim under 42 U.S.C. § 1985(3).*

#### A. *Jurisdiction*

■ This Court has original jurisdiction to entertain plaintiffs' civil rights cause of action under 28 U.S.C. § 1343 (1). This provision confers jurisdiction on the Federal courts of any civil action "to recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in Section 1985 of Title 42." Defendant airlines, however, contend that this Court lacks jurisdiction under the personal-property rights distinction of Hague v. C.I.O., 307 U.S. 496, 518–532, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (Stone, Jr. concurring). Under this rule, there is jurisdiction in the Federal courts only "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. C.I.O., *supra*, at 531–532, 59 S.Ct. at 971. Defendants assert that since plaintiffs are alleging injury to their property in excess of $50,000,000, the gist of their action is an infringement of property rights, and, therefore, the case should be dismissed for lack of jurisdiction. We find this contention to be without merit. Our research has indicated that the aforementioned personal-property rights distinction applies *only* where the cause of action is brought under 42 U.S.C. § 1983 and jurisdiction is sought under 28 U.S.C. § 1343(3). *See* generally, Nat'l. Land & Inv. Co. v. Specter, 428 F.2d 91

(3rd Cir. 1970); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969). Consequently, we conclude that this Court has jurisdiction over plaintiffs' Section 1985(3) cause of action.

#### B. *Essential Elements of a Section 1985(3) Cause of Action*

■ The Supreme Court recently held in Griffin v. Breckenridge, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed. 2d 338 (1971) that in order to state a cause of action under Section 1985(3), the complaint must allege the following:

"that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'"

These requirements of Section 1985(3), however, must be read in conjunction with the case law which requires specific factual pleading in a civil rights complaint. It is well established that a civil rights complaint must set forth allegations of facts showing some intentional and purposeful deprivation of constitutional rights. Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Powell v. Workmen's Comp. Bd., 327 F.2d 131, 137 (2d Cir. 1964). Moreover, it is recognized that broad, general and conclusory allegations, unsupported by specific facts, are insufficient to constitute a cause of action under the civil rights act. Negrich v. Hohn, 379 F.2d 213, 215 (3d Cir. 1967); Powell v. Workmen's Comp. Bd., *supra;* Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Agnew v. City of Compton, 239 F.2d 226 (9th Cir. 1956). In reading the complaint, it is clear that the allegations

fail to meet the standards established by the foregoing cases.

The allegations in the complaint in the instant case parallel closely the essential elements of a Section 1985(3) cause of action, as stated in Griffin v. Breckenridge, *supra,* but we must examine each allegation seriatim to determine whether the complaint alleges facts with sufficient specificity to withstand a motion to dismiss. Initially, as to conspiracy, plaintiffs allege that defendants "wilfully and maliciously conspired, planned and agreed to deprive the plaintiffs of their * * * rights by requiring them to pay fares grossly in excess of those charged to the class of persons between the ages of 12 and 26 years and/or students." Amended complaint ¶ 15. Secondly, as to the requirement that the complaint allege that the purpose of the conspiracy be to deprive plaintiffs of equal protection of the laws, plaintiffs allege that "one purpose of the defendants was to deprive the plaintiffs * * of the equal protection of the laws or equal privileges or immunities under the laws, including but not limited to, the right to travel freely and the pursuit of happiness." Amended complaint ¶ 17. Thirdly, the acts alleged to have been done in furtherance of the conspiracy are (1) "refusing to permit plaintiffs * * from enjoying equal protection of the laws, and equal privileges and immunities under the laws by refusing them the right to travel and pursue happiness by charging an unjustly discriminatory fare for such travel;" (2) "already collecting fares from members of the plaintiffs' class which are unjustly discriminatory and in derogation of their rights * * * [and] depriving plaintiffs of property without due process of law;" and (3) "announcing publicly that they intend to continue to discriminate against plaintiffs in the same manner for an indefinite time in the future." Amended complaint ¶ 18. Finally, plaintiffs allege that they were injured in their property (despite the fact no ticket was purchased), amended complaint ¶ 19, and they also allege that they were deprived of exercising a right or privilege of a citizen of the United States. Amended complaint ¶ 20.

In this complaint, plaintiffs merely alleged that defendants "wilfully and maliciously conspired," which in and of itself would be sufficient to dismiss this complaint. Initially, "opprobrious epithets" such as "wilfully and maliciously" add nothing of substance to the complaint. Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Agnew v. City of Compton, 239 F.2d 226, 231, n. 11 (9th Cir. 1956). Moreover, it is insufficient merely to allege conspiracy without setting forth supporting facts which tend to show an unlawful agreement, Drusky v. Judges of Supreme Court, 324 F.Supp. 332, 333 (W.D.Pa. 1971); O'Hara v. Mattix, 255 F.Supp. 540, 542 (W.D.Mich.1966), and, here, no supporting facts have been set forth to support the bare allegation of conspiracy among the named defendants. Plaintiffs' bare allegation that the purpose of the conspiracy was to deprive plaintiffs of equal protection of the laws is likewise insufficient for failure to state specific facts. Here, the tariffs filed by the foreign airlines were done so pursuant to orders from their national governments, while those filed by the domestic airlines were done so pursuant to a C.A.B. order, granting permission to establish competitive fares. The mere fact that varying fares have been filed in accordance with the regulatory provisions of the Federal Aviation Act does not by any means suggest that the motivation in establishing such fares was intentional and purposeful discrimination. Finally, all of the acts done in furtherance of the alleged conspiracy, similarly, have been done in accordance with the regulatory provisions of the Act. We, therefore, conclude that the conclusory nature of the statements in plaintiffs' complaint, unsupported by allegations of specific facts, are insufficient to state a cause of action under Section 1985(3) and, therefore, insufficient to withstand a motion to dismiss.

### C. *Exhaustion of Administrative Remedies*

██ It is well established that in civil rights cases, plaintiffs are required to exhaust their available administrative remedies prior to the filing of suit in court, and such remedies may be by-passed only where they are inadequate or futile. Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969). In the case at bar, plaintiffs argue that the administrative procedures established under the Federal Aviation Act are both inadequate and futile. The Federal Aviation Act makes no provision for the C.A.B. to award damages where filed tariffs are found to be unduly preferential, discriminatory, or prejudicial under Section 404(b) of the Act. Further, even where such tariffs are invalidated by the C.A.B. the cases decided under the rationale of T.I.M.E. Inc. v. United States, supra, would preclude any recovery of damages in court for money paid under invalid tariffs. We, therefore, find that the remedies provided by the Act are inadequate in that there may be no recovery of damages where a deprivation of civil rights may be involved. The plaintiffs, however, are seeking not only monetary damages, but also declaratory and injunctive relief under their civil rights claim.

██ Where a plaintiff seeks to have currently effective tariffs declared invalid or enjoined, the Act provides certain procedure to do so. Initially, any person may file a complaint with the C.A.B. in respect to anything done in contravention of any provisions of the Act. 49 U.S.C. § 1482(a). The C.A.B. is then required to investigate the matter complained of and if the C.A.B. finds rates to be unduly preferential, discriminatory, or prejudicial, it has the power to order the termination of such discrimination, 49 U.S.C. § 1482(f) or prescribe new rates 49 U.S.C. § 1482(d). In addition, the C.A.B. may bring an action in Federal court to enjoin any violation of the Act. 49 U.S.C. § 1487(a). Finally, any person disclosing a substantial interest in a C.A.B. order may appeal for review of such order to the United States Court of Appeals, 49 U.S.C. § 1486(a). We conclude that the scheme of remedies provided by the Act are neither inadequate nor futile. Therefore, in so far as plaintiffs are seeking declaratory and injunctive relief, their failure to exhaust the available and adequate administrative remedies precludes them from seeking such relief in this Court.

### V—*Conclusion.*

Even assuming, as we have, that all of the allegations in plaintiffs' complaint are true, we, nevertheless, conclude that this action should be dismissed on several grounds: (1) Plaintiffs' claim under Section 404(b) of the Federal Aviation Act will be dismissed in that (a) the C.A.B. has primary jurisdiction to determine whether the challenged tariffs are unduly preferential, discriminatory, or prejudicial; (b) the Federal Aviation Act provides that only the C.A.B. can seek an injunction against unduly preferential, discriminatory, or prejudicial tariffs, and it does not contemplate a private cause of action demanding injunctive relief; (c) the Federal Aviation Act does not provide for a cause of action to recover damages for rates charged under tariffs which are later found to be unduly preferential, discriminatory and prejudicial; and (d) the Federal Aviation Act establishes administrative procedures and remedies which plaintiffs failed to exhaust; (2) Plaintiffs' civil rights claim under Section 1985(3) seeking injunctive and declaratory relief and damages will be dismissed in that (a) plaintiffs' complaint is couched in broad and conclusory language unsupported by allegations of any specific facts other than the mere allegation that the student and youth fares are discriminatory; and (b) as to the injunctive and declaratory relief sought, plaintiffs have failed to exhaust their available and adequate administrative remedies, precluding them from demanding declaratory and injunctive relief in this Court.

Accordingly, plaintiffs' claims under 49 U.S.C. § 1374(b) and 42 U.S.C. § 1985(3) will be dismissed.