William J. CLARK, Pasquale F. Denigro, Thomas Graziano, August L. Magnanti, Orrie Passante, Jr., American Federation of Government Employees, Local 2612, Plaintiffs,

v.

Hans MARK, Secretary of the Air Force, Defendant.

No. 79–CV–777.

United States District Court, N.D. New York.

Aug. 27, 1980.

Popeo & Popeo, Utica, N.Y., for plaintiffs; Gerald J. Popeo, Utica, N.Y., of counsel.

George H. Lowe, U.S. Atty., for defendant; John J. McCann, Asst. U.S. Atty., Syracuse, N.Y., of counsel.

Robert J. Freehling, Sol., Federal Labor Relations Authority, Washington, D.C., for intervenor; Elizabeth Medaglia, Elizabeth T. Guarino, Washington, D.C., of counsel.

## MEMORANDUM DECISION AND ORDER

McCURN, District Judge.

### I. *Introduction.*

This case concerns a dispute between the Secretary of the Department of the Air Force, Hans Mark (defendant), and plaintiffs, Local 2612 of the American Federation of Government Employees and five civilian employees of the Air Force who are current members of Local 2612 at Griffiss Air Force Base (Griffiss)[1] in Rome, New York. (Plaintiffs are hereafter referred to as "plaintiffs", "plaintiff union members", or "plaintiff union" where appropriate.)

The dispute arose when the Air Force notified plaintiff union that it was required to repay the Air Force $2,884.00 which the Air Force had mistakenly withheld from the pay of thirty-seven (37) civilian employees and paid to plaintiff union as union dues between 1973 and 1978.[2] These employees were plaintiff union members at Griffiss who had left the bargaining unit at various dates and who continued as union members, but were ineligible for an automatic withholding of their union dues upon separation from the unit. After plaintiff union failed to reimburse the Air Force, it was notified that the amount claimed due would be set off against union dues withheld from the pay of present members of plaintiff union, including the five individual plaintiff union members.[3]

Article 35 of the Collective Bargaining Agreement between Griffiss and plaintiff union provided for union dues withholding.[4]

1. Griffiss Air Force Base is not a named party in this suit. Defendant does, however, exercise complete authority over the administrative and personnel actions undertaken by the Department of the Air Force at the air base.

2. The union dues allotment permission form is entitled "Request and Authorization for Voluntary Allotment of Compensation for Payment of Employees Organization Dues." The language on this form demonstrates that the burden is on plaintiff union member if that person wants to revoke authorization for the dues allotment.

3. On July 27, 1979, Captain G.H. Harrison, a member of the U.S. Air Force at Griffiss, sent a letter to plaintiff union. It states, in pertinent part:

 A thorough review of the financial records of employees listed on the attached sheet has disclosed that for various periods of time they held non-unit positions in which they were not entitled to exercise the union dues "check off" option. Nevertheless, dues "check off" was erroneously processed from their pay. The Air Force is required to recoup these dues from your organization and return them to the employees unless the employee personally waives such recoupment and reimbursement. This recoupment shall be for the last six years as of the date of this letter.

4. The Collective Bargaining Agreement between plaintiff union and Griffiss Air Force personnel was entered into on August 20, 1976. The dues withholding agreement, Article 35, provides, in pertinent part:

 Local 2612, American Federation of Government Employees has been granted exclusive recognition at Griffiss Air Force Base, and is therefore eligible to enter into a written agreement that permits voluntary allotments from pay for dues of its eligible employee members.... An eligible employee member of Local 2612, AFGE has the right to make voluntary allotment from his pay for the payment of his membership dues or to revoke his allotment whenever he so desires.... The Union will supply the SF–1187, "Request and Authorization for Voluntary Allotment of Compensation for Payment of Employee Organization Dues", certify on the form the amount of its dues, and distribute it to eligible employees who want to authorize an allotment.... Eligible employees return the SF–1187 to the Union after completing [it].... The Union submits the completed and certified SF–1187 to the ... servicing civilian payroll office ... [which] will prepare a listing of names and amounts withheld and forward it together with the remittance check. The list [prepared by the Air Force] will also include the names of those employees for whom allotments have been permanently or temporarily stopped.... An allotment is terminated when the employee leaves the unit as a result of resignation, retirement, transfer, or other separation, reassignment, promotion ... or other personal action.... The Union will promptly notify the servicing civilian payroll office, in writing, when one of its members is suspended or expelled or ceases to be a member in good standing.... An employee can voluntarily revoke his allotment ... at any time by submitting written notification ... to the servicing civilian payroll office.... The labor organization will be responsible for informing and educating its members concerning the voluntary program for the allotment of dues, the uses and availability of SF–1187, and the conditions for revocation of allotments.

Title VII of the Civilian Service Reform Act of 1978, 5 U.S.C. § 7101, *et seq.* (Title VII is hereafter referred to as the Federal Labor Relations Statute, or "FLRS") became effective on January 11, 1979. As of that date plaintiff union's entitlement to a dues withholding was also provided for by statute. See 5 U.S.C. § 7115.

On November 30, 1979, plaintiffs brought this action against defendant seeking a temporary restraining order, preliminary and permanent injunction, writ of mandamus, and declaratory judgment to prevent defendant from recouping any money from the current members' dues. Plaintiffs' complaint alleges that the jurisdiction of this Court "is based on 28 U.S.C. § 1331(a) in that this is an action arising under the First and Fifth Amendments of the Constitution and the laws of the United States—5 U.S.C. § 701 and 7101 *et seq.*" Complaint at 2. In the complaint plaintiffs assert that "[d]efendant's actions to recoup money on behalf of former union members' dues allotments is without any authority in law and is a wrongful conversion without due process of law under the Fifth Amendment." Complaint at 25. Further, plaintiffs state that "[b]y seeking to recoup money on behalf of former union members from dues allotments for the sole purpose of payment of their union dues, defendant is endangering and infringing upon plaintiffs' membership status in violation of the First Amendment Right of Freedom of Association and [the FLRS]." Complaint at 26. In their memorandum of law plaintiffs

assert that defendant's proposed recoupment violates the union dues assignment agreement (Article 35 of the Collective Bargaining Agreement). They allege that if the proposed recoupment of erroneously withheld dues takes place, plaintiff union members and other union members will not have their dues paid in full and will possibly lose their union membership and benefits. Complaint at 22–25.

After the complaint and motion for a temporary restraining order were filed, plaintiffs and defendant entered into an agreement preserving the status quo and preventing the proposed recoupment until this Court rules on the plaintiffs' motion for a preliminary injunction. Thereafter, defendant filed a motion to dismiss on grounds that the complaint fails to state a claim upon which relief can be granted and lack of subject matter jurisdiction. On January 10, 1980, this Court held a hearing on plaintiffs' motion for a preliminary injunction during which defendant presented a jurisdictional challenge. After taking evidence and hearing argument, the Court reserved decision and allowed the parties to submit further papers with respect to defendant's motion to dismiss.[5] These proceedings were consolidated into a hearing on the merits. Rule 65, Fed.R.Civ.P.

On January 24, 1980, pursuant to Rule 24, Fed.R.Civ.P., the Federal Labor Relations Authority (hereinafter referred to as FLRA) moved to intervene for the purpose of asserting its exclusive jurisdiction over

---

**5.** At the hearing testimony and documents were received by this Court which describe the union dues check-off system in operation at Griffiss between plaintiff union and defendant. Article 35 of the Collective Bargaining Agreement places responsibility on both defendant and plaintiffs for withdrawal of the dues allotment permission form, SF–1187, when a union member leaves the bargaining unit. The Griffiss civilian payroll office is required to notify the union when an allotment is terminated when an employee leaves the bargaining unit as a result of resignation, retirement, transfer, or other separation, reassignment, promotion, or other personal action. The union must notify when one of its members is suspended, expelled or ceases to be a member in good standing. The plaintiff union bears an additional responsibili-

ty for informing and educating its members concerning the dues allotment program and the conditions for the revocation of allotments. See footnote 4, supra.

It appears that errors were made by both plaintiff union and defendant concerning the withdrawal of permission for dues allotments previously filed by each of the thirty-seven (37) employees when they submitted their SF–1187 forms. Although substantial errors were made by defendant's civilian payroll office at Griffiss in failing to report when an employee left the bargaining unit, the union failed in its responsibility to educate its members concerning the dues check-off system. Adequately prepared union members who had dues erroneously withheld could have initiated timely corrective action.

disputes relating to alleged violation of the FLRS. 5 U.S.C. § 7101, *et seq.* The FLRA asserted that it has a right to intervene because it has sole responsibility under 5 U.S.C. § 7105(a)(2)(G) to determine plaintiffs' claims of violations of the FLRS and that action by this Court on this issue would usurp its authority. In the alternative, the FLRA asserted that allowing intervention here would be a proper exercise of this Court's discretion because the FLRA is charged with administration of the FLRS. On February 25, 1980, after hearing oral argument the Court granted the motion to intervene from the Bench.

Presently before this Court are:

(1) plaintiffs' motion for a preliminary and permanent injunction, mandamus and declaratory judgment;

(2) defendant's motion to dismiss; and

(3) FLRA's motion to dismiss the claims in the complaint which are based on alleged violations of the FLRS.

Defendant Secretary's motion to dismiss is based on alleged exclusive jurisdiction of the FLRA and upon the failure of plaintiff to demonstrate a minimum probable irreparable injury, a necessary requisite for preliminary injunctive relief.

The intervenor FLRA's motion to dismiss under Rule 12(b)(1), Fed.R.Civ.P., is similarly based on its alleged exclusive jurisdiction over the subject matter of this suit. The FLRA argues that plaintiffs' allegations constitute unfair labor practices under the FLRS for which it has exclusive jurisdiction and that plaintiffs at the time of argument had not filed an unfair labor practice claim with it.[6]

In opposition to defendant's and intervenor's motion to dismiss, plaintiffs argue that their complaint is based essentially on violations of the First and Fifth Amendments and not solely on violations of the Collective Bargaining Agreement and the FLRS. Plaintiffs assert that the unfair labor practice provision, 5 U.S.C. § 7116, is not an exclusive remedy here, but merely a secondary alternative remedy. They argue that the FLRA cannot decide the Constitutional issues which are the heart of their claims in this case. Further, they assert that this Court's jurisdiction over their Constitutional claims is not pre-empted by that of the FLRA even though they have not exhausted FLRA administrative remedies. Plaintiffs allege that defendant has no authority to order the recoupment of money in contradiction to the Article 35 allotment provisions. They frame the issue of this case as whether the defendant has a right to unilaterally take and use an employee's dues assignment monies for an unauthorized purpose.

## II. *Discussion.*

### A. Claims Under the FLRS.

Plaintiffs' complaint and submitted memoranda clearly demonstrate that their allegations are covered, at least in part, by the FLRS. In the Complaint plaintiffs allege that "this is an action arising under ... the laws of the United States—5 U.S.C. § 7101, et seq."; that "[u]nder ... 5 U.S.C. § 7115, an allotment is terminated when the employee leaves the bargaining unit"; that "[t]he plain duty of Griffiss Air Force Base under the collective bargaining contract it has entered into with plaintiff AFGE Local 2612, now being administered in accordance with 5 U.S.C. § 7115, is to transmit to the union the full amount of dues deducted from the pay of union members"; and "[p]laintiffs request that the Court enter a declaratory judgment that defendant's recoupment actions are in violation of plaintiffs' ... statutory rights under 5 U.S.C. § ... 7101 et seq...."

The statute relied upon, in part, by plaintiffs as a basis for asserting this Court's jurisdiction, 5 U.S.C. § 7115, provides:

a) If an agency has received from an employee in an appropriate unit a written assignment which authorizes the agency

6. On May 22, 1980, plaintiff union filed an unfair labor practice charge with the FLRA. The charge seeks relief from the FLRA for precisely the same actions by defendant which are the subject matter of this lawsuit.

to deduct from the pay of the employee amounts for the payment of regular and periodic dues of the exclusive representative of the unit, the agency shall honor the assignment and make an appropriate allotment pursuant to the assignment...

b) An allotment under subsection (a) of this section for the deduction of dues with respect to any employee shall terminate when—

> 1) the agreement between the agency and the exclusive representative involved ceases to be applicable to the employee; ...

5 U.S.C. § 7116 provides:

a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—...

> 8) to otherwise fail to refuse to comply with any provision of this chapter.

Under § 7116(a)(8), any agency violation of § 7115 is an unfair labor practice. Under 5 U.S.C. § 7118, any allegation of unfair labor practice is required to be filed with the General Counsel of the FLRA for investigation and the issuance of a complaint.[7] The procedures the FLRA must follow when it receives an unfair labor practice are set forth at 45 Fed.Reg. 3505–3510. These include procedures for the investigation of charges; determination as to whether to issue a complaint; the issuance of a complaint; conduct of a hearing; the duties of an administrative law judge; and, for making a final determination on the complaint.

■ It is clear that plaintiffs' cause of action, as premised upon claimed violations of the FLRS, should have been brought before the FLRA as an unfair labor practice complaint instead of this Court. Claims concerning a dispute over the recoupment of erroneously withheld dues clearly come within the purview of 5 U.S.C.

§ 7115 and § 7116. They are within the exclusive jurisdiction of the FLRA to hear. 5 U.S.C. § 7105 provides, in pertinent part:

a)(1) The Authority [FLRA] shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter.

(2) The Authority [FLRA] shall, to the extent provided by this chapter ...

> (G) conduct hearings and resolve complaints of unfair labor practices under section 7118 of this title ...

Thus, under this section and 5 U.S.C. § 7104(f)(2), the FLRA and its General Counsel are vested with the responsibility for investigating and prosecuting unfair labor practice complaints.

The formal procedural steps which must be followed when any party files an unfair labor practice charge are set out in 5 U.S.C. § 7118. When an unfair labor practice charge is filed with the FLRA, its General Counsel must conduct an investigation and dismiss the charge or issue a complaint. 5 U.S.C. § 7118(a)(1). If the charge is dismissed, the General Counsel is required to state the reasons for the dismissal in writing. *Id.* If a complaint is issued by the FLRA, the party against whom it is issued has a right to answer and to participate in the necessary hearing. 5 U.S.C. § 7118(a)(3). Under 5 U.S.C. § 7118(a)(6), a hearing is held, generally conducted in the first instance by an administrative law judge who has power delegated by the FLRA. 5 U.S.C. § 7105(d)–(e)(2). The FLRA is empowered to review the administrative law judge's decision under 5 U.S.C. § 7105(f). If an unfair labor practice is not found, the complaint must be dismissed, or if found, appropriate remedial relief is provided for. 5 U.S.C. § 7118(a)(7) and (8). The FLRA has the exclusive right to peti-

---

**7.** 5 U.S.C. § 7118 provides:

a)(1) If any agency or labor organization is charged by any person with having engaged in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint. In any case

in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint....

**6**

tion a U.S. District Court for necessary temporary relief. 5 U.S.C. § 7123(d). A final order of the FLRA is appealable to the appropriate U.S. Court of Appeals by any person aggrieved. 5 U.S.C. § 7123(a). The FLRA may petition to an appropriate U.S. Court of Appeals for enforcement of any remedial orders or for temporary relief. 5 U.S.C. § 7123(b).

 In creating this administrative process for the consideration and resolution of unfair labor practice claims by federal employees, it is clear that Congress charged the FLRA with resolving such. In the FLRS, Congress did not make provision for alternative forums for the hearing and deciding of unfair labor practice claims in the federal sector. Where Congress has granted power to an agency administering a statute, as here, private power to bring suit is not available for use by private parties in attempts to sue in the U.S. District Courts.[8]

The FLRS' legislative history demonstrates that the FLRA was intended by Congress to possess and exercise exclusive jurisdiction over cases involving complaints which allege violations of the FLRS. The July 31, 1978, Report of the House Committee on Post Office and Civil Service discusses the intended role of the FLRA and the purpose of the FLRS:

> Title VII [of the FLRS], in concert with the President's Reorganization Plan No. 2 of 1978, also constructs a new framework for the conduct of Federal-labor-management relations. The [FLRA], an independent establishment in the establishment, together with its Office of General Counsel, will be primarily responsible for the administration of the program and enforcement of the policies reflected in Title VII.... Section 7104, in concert with Reorganization Plan No. 2 of 1978, establishes and describes the [FLRA], an independent establishment in the executive branch. The committee intends that the Authority's role in Federal sector-labor-management relations be analogous to that of the National Labor Relations Board in the private sector. Functions which, under the Executive Order 11491 program, were distributed among various entities (such as the Civil Service Commission and the Department of Labor) are to be consolidated under the Authority.

Report of the Committee on Post Office and Civil Service of H.R. 11280, H.R.Rep. No. 95–1403, 9th Cong., 2d Sess. 38, 41 (July 31, 1978).

The Senate also anticipated that the role of the Federal Labor Relations Authority (FLRA) would be analogous to that of the National Labor Relations Board (NLRB). The Senate Governmental Affairs Committee's Comments referred to unfair labor practice charges:

> It is intended that unfair labor practice complaints will be handled by the General Counsel of the Authority in a manner essentially identical to National Labor Relations Board practices in the private sector.

Report of the Committee on Governmental Affairs on S. 2640, S.Rep. No. 95–969, 95th Cong., 2d Sess. 106, reprinted in 1978 U.S. Code Cong. & Ad.News 2723, 2828.[9]

---

**8.** In *Eisman v. Pan American World Airlines,* 336 F.Supp. 543 (E.D.Pa.1971) the court found that private plaintiffs were precluded under the Federal Aviation Act from seeking an injunction for an alleged violation of that Act. In the *Eisman* decision, the court approvingly quoted from *Caribbean Atlantic Airlines, Inc. v. Leeward Islands Air Transport,* 269 F.Supp. 231, 233 (D.P.R.1967). There, the court, in denying injunctive relief, stated:

> The plain language of Section 1487(a) precludes a private litigant from resort to the jurisdiction of a United States district court for the purpose of prosecuting a civil action to enforce the provisions of 49 U.S.C.A. § 1372(a), since the statute provides that only the CAB or the Administrator may apply to the district court for the enforcement of any provision of this chapter, or any rule, regulation, requirement or order thereunder.

See also, *Rauch v. United Instruments, Inc.,* 405 F.Supp. 435, 440–441 (E.D.Pa.1975).

**9.** The role of the NLRB's General Counsel is similar to the role of the FLRA's General Counsel. In, *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 138–139, 95 S.Ct. 1504, 1510–1511, 44 L.Ed.2d 29 (1975), the Supreme Court described authority of the NLRB's General Counsel:

In analogizing the role of the FLRA and the scope of judicial review of its actions under the Federal Labor Relations Statute (FLRS) to the role of the NLRB and the scope of judicial review under the National Labor Relations Act (NLRA), Congress recognized judicial acceptance of the NLRB's exclusive jurisdiction over the administration and adjudication of unfair labor practice charges. In discussing the role of the NLRB and its exclusive jurisdiction over the administration and adjudication of unfair labor practice charges, the Supreme Court has stated:

The Congress declared that certain labor practices should be unfair, but it prescribed a particular method by which such practices should be ascertained and prevented. By the express terms of the Act, the [NLRB] was made the exclusive agency for that purpose....

The Act then sets forth a definite and restricted course of procedure. A charge of an unfair labor practice may be made to the [NLRB], but the person or group making the charge does not become the actor in the proceeding. It is the Board, and the Board alone or its designated agent, which has power to issue its complaint against a person charged with an unfair labor practice....

So far, it is apparent that Congress has entrusted to the Board exclusively the prosecution of the proceeding by its own complaint, the conduct of the hearing, the adjudication and granting of appropriate relief. The Board as a public agency acting in the public interest, not any private person or group, not any employee or group of employees, is chosen as the instrument to assume protection from the described unfair conduct in order to remove obstructions to interstate commerce.

*Amalgamated Utility Workers v. Consolidated Edison Co. of New York*, 309 U.S. 261, 264–265, 60 S.Ct. 561, 563–564, 84 L.Ed. 738 (1940). Further, it has been held that federal district courts have no jurisdiction to enter private controversies to enjoin or remedy any alleged violations of the NLRA. *Amalgamated Clothing Workers of America v. Richman Brothers*, 348 U.S. 511, 516–517, 75 S.Ct. 452, 455–456, 99 L.Ed. 600 (1955). ·See generally *National Labor Relations Board v. Nash-Finch Co.*, 404 U.S. 138, 145, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971).

The allegations in plaintiffs' complaint, as premised upon the FLRS, constitute unfair labor practice charges which should be brought before the FLRA.[10] The statutes and their legislative history demonstrate that Congress did not intend to allow unions, agencies, or individuals to petition the district courts for injunctive relief for final determinations concerning unfair labor practice charges. The FLRA and its General Counsel have exclusive jurisdiction over the investigation and prosecution of unfair labor practice charges in the federal sector and have the right to seek preliminary injunctive relief and further judicial review. Inasmuch as the FLRA has exclusive jurisdiction to adjudicate alleged violations of the FLRS, this Court lacks jurisdic-

---

Congress has delegated to the Office of General Counsel on "behalf of the Board" the unreviewable authority to determine whether a complaint shall be filed. 29 U.S.C. § 153(d); *Vaca v. Sipes*, 386 U.S. 171, 183 [87 S.Ct. 903, 913, 17 L.Ed.2d 842] (1967). In those cases in which he decides that a complaint shall issue, the General Counsel becomes an advocate before the Board in support of the complaint. In those cases in which he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first per-

suading the Office of General Counsel that his claim is sufficiently meritorious to warrant Board consideration.

**10.** Plaintiffs argued at the hearing for the preliminary injunction that 5 U.S.C. § 7112 did not apply in this case. They asserted that the recoupment errors which were made affected past union members who were promoted out of the bargaining unit to supervisory positions and that § 7112 does not pertain to supervisors. However, plaintiffs' allegations are in fact unfair labor practice complaints which are covered under the FLRA.

tion. Plaintiffs' claims are properly before the FLRA.[11]

### B. Constitutional Claims.

There remains the consideration of plaintiffs' Constitutional claims. Plaintiffs allege that defendants' proposed recoupment violates their First Amendment right of freedom of association and their Fifth Amendment due process rights. They contend that the allegations made in the complaint are based primarily upon these Constitutional provisions. Defendants assert that these claims are arguably unfair labor practices which are subject to the exclusive jurisdiction of the FLRA.

As discussed previously in this opinion, the role of the FLRA was intended by Congress to be analogous to the NLRA's role in private labor-management relations. It is a question of first impression as to whether pre-emption as applied under the NLRA should be used in a similar manner under the FLRS.

When unfair labor practices are alleged under the NLRA, the general rule is that "the federal courts must defer to the exclusive competence of the [NLRB]." *San Diego Trades Council v. Garmon,* 359 U.S. 236, 248, 79 S.Ct. 773, 782, 3 L.Ed.2d 775 (1959). See also, Menzines, Stein and Gruff, *Administrative Law* § 2.03[1] (1979). This general rule of exclusive jurisdiction of the NLRB is not limited to situations where there have been specific allegations of unfair labor practices. In *Amalgamated Association of Street Electrical Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), the Supreme Court stated:

> Assuredly the proposition that Lockridge's complaint was not subject to the exclusive jurisdiction of the NLRB because if charged a breach of contract rather than an unfair labor practice is not tenable. Pre-emption, as shown

above, is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of the governing legal standards, that is the proper focus of concern. Indeed, the notion that a relevant distinction exists for such purposes between particularized and generalized labor law was explicitly rejected in *Garmon* itself. . . .

*Id.* at 292, 91 S.Ct. at 1920. In focusing upon the conduct being regulated here, plaintiffs claim that the proposed recoupment violates their First and Fifth Amendment rights constitutes an arguable unfair labor practice complains under 5 U.S.C. § 7116(a)(8) concerning violations of 5 U.S.C. § 7115. In a case brought under the NLRA, the Supreme Court stated "[w]hen an activity is arguable subject to . . . § 8 of the Act [concerning unfair labor practices], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] . . .",. *San Diego Building Trades Council v. Garmon,* supra, 359 U.S. at 245, 79 S.Ct. at 780. Accord, *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 187–188, 98 S.Ct. 1745, 1752–1753, 56 L.Ed.2d 209 (1978); *Buckley v. American Federation of Television & Radio Artists,* supra, 496 F.2d at 312–313; *Getz v. Southwestern Bell Telephone,* 465 F.Supp. 883, 886 (E.D.Mo.1979); *Bernstein v. Universal Pictures, Inc.,* 379 F.Supp. 933, 939 (S.D.N.Y.1974).

Since plaintiffs' Constitutional claims are arguable unfair labor practices, they must be dismissed as pre-empted under the FLRS. Plaintiffs can bring these claims before the FLRA. This result is dictated by the Second Circuit's decision in an analogous NLRB case. *Buckley v. American Federation of Television & Radio Artists,* supra, 496 F.2d at 312. There, Constitutional claims, which were deter-

---

11. The Court notes that the result reached here as to the claims made under the FLRS is consistent with recent decision in *National Federation of Federal Employees, Local 1263 v. Com-*

*mandant, Defense Language Institute, West Coast Branch, et al.,* 493 F.Supp. 675 (N.D.Cal. 1980).

mined to be unfair labor practices, were dismissed because the federal court was required to defer to the exclusive competence of the NLRB. *Id.* at 312. The dismissal here is consistent with judicial concern, as demonstrated in *Buckley*, that the national labor policy be shielded from conflicting regulation.[12]

### C. Preliminary Injunction.

Although dismissing plaintiffs' claims because they should be brought before the FLRA, this Court feels compelled to discuss the issuance of a preliminary injunction here because until the FLRA makes its determination, defendant is free to begin recouping the monies from plaintiff union members. Keeping this in mind, even if the Court had jurisdiction to issue a preliminary injunction, it would not do so here.

The standard in the Second Circuit for the issuance of a preliminary injunction is that:

> there must be a showing of possible irreparable injury *and* either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly toward the party requesting the relief. *Buffalo Courier-Express, Inc. v. Buffalo Evening News,* 601 F.2d 48, 54 (2d Cir.1979), quoting from *Caulfield v. Board of Education of the City of New York,* 583 F.2d 605, 610 (2d Cir.1978).

Irreparable injury means "injury for which a monetary award cannot be adequate compensation [and] where money damages [are] adequate compensation, a preliminary injunction will not issue." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Furthermore, the

threatened injury may not be remote or merely speculative. *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745 (2d Cir.1977).

■ Under this standard, even if this Court had not granted the motion to dismiss, it would not have issued a preliminary injunction here. Although plaintiffs have shown a possible irreparable injury, however slight, because of the possible damage to management-employee relations at Griffiss if the proposed recoupment takes place, neither a probable success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly to plaintiffs have been demonstrated.

### III. *Conclusion.*

Plaintiffs' motion for preliminary and permanent injunctive relief, for a writ of mandamus and for a declaratory judgment is denied. Intervenor's motion for a dismissal of claims based upon the FLRS is granted and defendant's motion to dismiss all of the claims is granted.

Plaintiffs are free to bring their claims before the FLRA.

IT IS SO ORDERED.

---

12. In retrospect, if the Court had not dismissed plaintiffs' Constitutional claims because its jurisdiction is pre-empted by the FLRA, it would have stayed resolution of these claims under the doctrine of primary jurisdiction until after the FLRA had made its determination. In *P.A.M. News Corp. v. Hardin,* 440 F.2d 255 (D.C.Cir.1971), the court stated that "[c]ourts generally prefer to rule upon Constitutional questions which involve the scope of power of an administrative agency only after the agency itself has considered the Constitutional issue and made a determination about the weights of competing administrative policies and interests." *Id.* at 257.