Angel A. BRITO, Plaintiff,

v.

William J. DIAMOND, Regional Administrator, General Services Administration, Region 2, General Services Administration, Region 2, Richard Austin, Administrator, General Services Administration, General Services Administration, United States of America, John Ulianko, individually and in his official capacity as Chief of Operations, Law Enforcement Branch, General Services Administration, Region 2, Horst E. Mueller, individually and in his official capacity as Regional Personnel Officer, General Services Administration, Region 2, Defendants.

No. 91 Civ. 0982 (RLC).

United States District Court,
S.D. New York.

June 26, 1992.

---

BLS Legal Services Corp., Federal Litigation Program (Minna J. Kotkin, of counsel), Brooklyn, N.Y., for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Sara L. Shudofsky, of counsel), New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Angel Brito brings this action asserting various claims in connection with his dismissal from his position as a Federal Police Officer employed by the General Services Administration ("GSA"). Defendants in this action are: William Diamond, Regional Administrator of the GSA, Region 2; the GSA, Region 2; Richard Austin, Administrator of the GSA; the GSA; the United States of America; John Ulianko, a GSA official; and Horst E. Miller, a GSA official. Plaintiff alleges violations of the First and Fifth Amendments to the United States Constitution, the Civil Service Reform Act, 5 U.S.C. § 7114 et seq. (1988), his collective bargaining agreement, and GSA regulations. Plaintiff also asserts that his dismissal was arbitrary and capricious. Defendants have moved, under Rule 12(c), F.R.Civ.P., for judgment on the pleadings and alternately under Rule 56, F.R.Civ.P., for summary judgment on all plaintiff's claims. Plaintiff has moved for summary judgment on his Fifth Amendment claim.

### I.

The GSA hired plaintiff Angel Brito as a Federal Police Officer on June 5, 1989. Plaintiff's first year of service was a probationary period and, according to the GSA's records, plaintiff executed his duties completely satisfactorily until March 23, 1990. On that date, according to the GSA, plaintiff, while on duty, received a radio message directing him to respond to a call but replied that he could not respond because he was having lunch. The GSA also alleges that on March 26, plaintiff broadcast a message over the official Federal Protective Service telecommunications system directing all units to respond to an emergen-

cy when in fact plaintiff knew that no emergency existed. The GSA further alleges that on March 27, after a meeting with defendant Ulianko and another GSA official concerning the March 23 and March 26 incidents, plaintiff failed to report back to work in a reasonable time. Plaintiff contests the accuracy of the GSA's descriptions of the March 23 and March 27 incidents, although he does not substantially contest the accuracy of the description of the March 26 incident. Plaintiff also asserts that at the March 27 meeting with defendant Ulianko, he requested to have his union representative present but was prevented from doing so until the meeting had ended.

In a memorandum dated May 14, 1990, defendant Mueller informed plaintiff that his employment by the GSA would be terminated on May 25, ten days before the end of his probationary period. The memorandum cited the March 23 and March 26 incidents. No formal hearing was held with respect to plaintiff's alleged misconduct and the GSA terminated him on May 25. The GSA remained in possession of plaintiff's personnel file which contained records of the March 23, 26 and 27 incidents and the reasons for plaintiff's termination. The GSA's procedures allow it to distribute plaintiff's personnel file to prospective employers. Plaintiff appealed his termination to the Merit Systems Protection Board, which dismissed the appeal, but did not file a claim with the Federal Labor Relations Authority. Plaintiff subsequently began this action.

## II.

Defendants have submitted affidavits and other material with their motion. Since the motion will be decided based on this extra-pleading material, as well as that submitted by plaintiff, it may not be decided on the basis of a judgment on the pleadings, *see* Rule 12(c), F.R.Civ.P., and must be evaluated as a motion for summary judgment. *See id.* In order to prevail on a

summary judgment motion, a party must show that "there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Rule 56, F.R.Civ.P. The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue" which must be reserved for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, the court must decide whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## III.

Both plaintiff and defendants have moved for summary judgment on plaintiff's Fifth Amendment claim. Plaintiff claims that his dismissal constituted a deprivation of liberty without due process of law in violation of the Fifth Amendment because he was denied a hearing to refute the charges against him.[1] In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that a government employee's liberty interest is implicated when he is dismissed amid charges that "impose[ ] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities" or that "might seriously damage his standing and associations in his community." *See id.* at 573, 92 S.Ct. at 2707. The court stated that, for example, charges of "dishonesty, or immorality" would stigmatize an employee because they call into question his " 'good name, reputation, honor, or integrity.' " *Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). In such a case, the employee must be provided with a name-clearing hearing. *See id.*

---

**1.** While, as a probationary employee, plaintiff had no Fifth Amendment property interest in continued employment, *see Smith v. Lehman*, 689 F.2d 342, 345 (2d Cir.1982), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983), he still possessed a liberty interest in protecting his reputation from the publication of false information. *See id.* at 346 n. 8.

In order for a dismissal to be an unconstitutional deprivation of liberty, the charges against the dismissed employee must be stigmatizing and likely to be disclosed to prospective employers, and the employee must allege that the charges are false. *See, e.g., Brandt v. Board of Coop. Educ. Servs., Third Supervisory Dist.*, 820 F.2d 41 (2d Cir.1987). In the present case, defendants claim that the allegations surrounding plaintiff's dismissal are not sufficiently stigmatizing to constitute an unconstitutional deprivation of liberty.

In order to be stigmatized enough to be deprived of liberty, a dismissed employee must be accused of something more than unsatisfactory job performance. In *Russell v. Hodges*, 470 F.2d 212 (2d Cir. 1972), the Second Circuit, per Judge Friendly, evaluated a liberty interest claim of an employee who had been dismissed based on allegations of incompetence. The court, in rejecting his liberty interest claim, stated:

> [W]e believe the Court [in *Roth*] was thinking of something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct; the cases cited as illustrations involved charges of chronic alcoholism or association with subversive organizations. Indeed, a general rule that informing an employee of job-related reasons for termination created a right to a hearing, in circumstances where there was no constitutional requirement for the state to do anything, would be self-defeating; the state would merely opt to give no reasons and the employee would lose the benefit of knowing what might profit him in the future.

470 F.2d at 217. The Court of Appeals read *Roth* to mean that an accusation of incompetence is insufficient to constitute an unconstitutional deprivation of liberty. *See id.; see also Schwartz v. Thompson*, 497 F.2d 430, 432 & n. 3 (2d Cir.1974) (explaining *Russell's* holding).

Building on this holding, this court has held that a dismissal must be accompanied by an accusation of dishonesty, illegality or immorality in order to meet *Roth's* requirement that the employee be stigmatized. *See Capers v. Long Island R.R.*, 429 F.Supp. 1359, 1368 (S.D.N.Y.) (Gagliardi, J.) (accusations of incompetence and inability to get along with coworkers are not sufficient), *aff'd without opinion sub nom Harris v. Long Island R.R.*, 573 F.2d 1291 (2d Cir.1977); *see also Watson v. Sexton*, 755 F.Supp. 583, 592 (S.D.N.Y.1991) (Mukasey, J.) (accusations of drug use are sufficiently stigmatizing, but accusations of abuse of company sick time and lateness policy are insufficient); *Nauta v. City of Poughkeepsie*, 610 F.Supp. 980 (S.D.N.Y. 1985) (Lasker, J.) (accusations of inefficiency and incompetence are not sufficient). Plaintiff appears to concede that the accusations against him do not meet this standard.

Plaintiff, however, argues that the Second Circuit has modified this rule, and that the proper test merely requires plaintiff to show that the charges are stigmatizing enough to foreclose other job opportunities, rather than requiring him to show that he has been accused of dishonesty, illegality or immorality. Plaintiff relies on *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir.1980). There the Court of Appeals noted that *Roth* does not impose a requirement that the employee be accused of immorality or dishonesty and that "[o]ur review of analogous cases indicates that stigmatizing information is not limited to charges of illegality, dishonesty or immorality." 613 F.2d at 446 n. 4. However, that portion of *Quinn* was dicta since in that case there were allegations of dishonesty and since the court did not rely on this language for its disposition of the case. *See* 613 F.2d at 446–47. Hence *Russell* and its progeny must be regarded as providing the governing law.[2]

Therefore plaintiff must show that he was dismissed amid allegations of dishon-

---

**2.** Likewise, plaintiff's argument that *Roth's* language is broad enough to encompass the rule he prefers may also be rejected. While *Roth's* language is broad enough to be given this construc-

tion, the Supreme Court was not faced with the present issue in *Roth* or any subsequent case. Hence the rule in this court will be followed.

est, illegal or immoral conduct in order to be stigmatized enough to be unconstitutionally deprived of liberty. Plaintiff is required to present facts that would support such a showing for his Fifth Amendment claim to survive a summary judgment motion. Since he has not done so, his Fifth Amendment claim must be dismissed.

## IV.

### A.

■ In addition to his claim that he was denied a hearing in violation of Due Process, plaintiff also claims that he was denied the opportunity to have his union representative present at his March 27 meeting with defendant Ulianko and another GSA official concerning his alleged misconduct. Plaintiff alleges that this denial violated his statutory right to union representation under Title VII of the Civil Service Reform Act of 1978 ("CSRA" or "the Act"), 5 U.S.C. § 7101 et seq. (1988). Defendants have moved to dismiss this claim, contending that Title VII requires that the claim be asserted administratively before the Federal Labor Relations Authority ("FLRA") before being brought in federal court.

Since its enactment in 1978, Title VII of the CSRA has been "the controlling authority" governing labor relations between the federal government and its employees. *Karahalios v. National Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 531, 109 S.Ct. 1282, 1285, 103 L.Ed.2d 539 (1989). Title VII provides a complex statutory scheme governing labor relations in the federal sector, which the FLRA has primary responsibility for administering. The FLRA has broad authority to adjudicate claims arising under the statute. *See* 5 U.S.C. § 7105. Review of a final decision of the authority is available in the federal courts. *See* 5 U.S.C. § 7123(a), (b).

It is settled law that the FLRA has exclusive jurisdiction over Title VII claims. Courts have concluded that both the structure of the Act, with its complex system for administrative resolution of labor disputes, and its legislative history indicate that Congress intended the procedures outlined in the Act to be the exclusive means for resolving disputes arising under Title VII. *See Karahalios, supra*, 489 U.S. at 531–37, 109 S.Ct. at 1285–88; *Columbia Power Trades Council v. United States Dep't of Energy*, 671 F.2d 325, 326–27 (9th Cir.1982); *Walsh v. United States*, 588 F.Supp. 523, 525–26 (N.D.N.Y.1983); *Clark v. Mark*, 590 F.Supp. 1, 5–8 (N.D.N.Y.1980). For this reason, courts have refused to create an implied right of action in federal court for adjudication of Title VII disputes, *see Karahalios, supra*, 489 U.S. at 531–37, 109 S.Ct. at 1285–88, and have even held that the enactment of the CSRA implicitly repealed certain prior grants of federal court jurisdiction to adjudicate labor disputes. *See United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (CSRA repealed former direct rights of action under Tucker Act and Back Pay Act).

Therefore, plaintiff's claim that his dismissal violated his statutory right to union representation under Title VII of the CSRA comes within the exclusive jurisdiction of the FLRA and must be asserted before that agency. Federal court review of this claim is only available after it has been asserted before the FLRA and the agency has rendered a final decision. Therefore the claim must be dismissed.

Plaintiff also claims that his dismissal violated his union's collective bargaining agreement and internal GSA rules and regulations. These claims must also be dismissed, since they are also Title VII claims meant to be asserted before the FLRA as unfair labor practices, *see* 5 U.S.C. §§ 7116(a)(1), (7), (8), 7118, or through Title VII's grievance procedures. *See* 5 U.S.C. § 7103(a)(9), 7121.

### B.

■ Plaintiff also brings a constitutional claim based on the alleged denial of his request to have a union representative present at the March 27 meeting. Plaintiff asserts that this denial violated his right to associate under the First Amendment to the United States Constitution. Defen-

dants have moved to dismiss this claim, contending that it must also be asserted before the FLRA.

The requirement that claims cognizable under Title VII of the CSRA be asserted in that statute's administrative processes has been extended to constitutional claims. In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court declined to recognize a *Bivens*-type federal court remedy for a federal employee who claimed he was discharged in violation of his First Amendment right to free speech. The Court reasoned that Congress' creation of the complex statutory and regulatory scheme embodied in the CSRA and its associated regulations militated against the fashioning of an additional, constitutional remedy. *See* 462 U.S. at 374–90, 103 S.Ct. at 2409–17. The concurrence, however, noted that the personnel actions complained of in that case could be adequately remedied in the administrative process and that different result would be dictated if there was not an adequate administrative remedy for the unconstitutional conduct. *See* 462 U.S. at 390–91, 103 S.Ct. at 2417–18 (Marshall, J., concurring). While the Supreme Court decided *Bush* in the context of the CSRA's provisions governing dismissals for misconduct, *see* 462 U.S. at 386–87, other courts have applied the same rationale to constitutional claims cognizable under Title VII of the CSRA.

In *Andrade v. Lauer*, 729 F.2d 1475 (D.C.Cir.1984), the D.C. Circuit held that a federal court must decline jurisdiction over constitutional claims when they are "virtually identical" to claims that could be asserted under Title VII, if the administrative process is "capable of granting full relief," and if there is a "fair and efficient administrative process" to handle the claims. *See* 729 F.2d at 1492–93. In that situation, the employee must be relegated to the administrative process. *See id.* Any other rule would allow federal employees to circumvent Title VII's administrative processes simply by "clever drafting of a complaint." *Steadman v. Governor, United States Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C.Cir.1990). Other courts have similarly held that when a constitutional claim is

identical to a claim cognizable under Title VII, the employee must assert his claim in the administrative process. *See Carter v. Kurzejeski*, 706 F.2d 835, 841–42 & n. 9 (8th Cir.1983); *Walsh, supra,* 588 F.Supp. at 526–27; *Clark, supra,* 590 F.Supp. at 8. The aggrieved employee may assert his constitutional claim in federal court, through the appropriate review procedure, only after he has exhausted the administrative process. *See Steadman, supra,* 918 F.2d at 968; *Carter, supra,* 706 F.2d at 841 (noting that judicial review of administrative determinations under Title VII includes review of constitutional claims).

In the present case, plaintiff's constitutional claim is a mere restatement of his Title VII claim. Plaintiff's claim that he had a right to "associate" with his union representative at the March 27 meeting is merely a repetition of his Title VII claim that he had a right to have that representative present at that meeting, and he seeks the same damages for both claims. If the administrative process is fair and capable of hearing his claim, then the claim must be asserted in that process. *See Andrade, supra,* 729 F.2d at 1492–93. As the following discussion indicates, Title VII's administrative processes provided plaintiff with two avenues to adjudicate this claim, each of which appears to be a fair means for its resolution.

First, plaintiff could have challenged the denial of his request for union representation as an unfair labor practice. 5 U.S.C. § 7114(a)(2) provides, in pertinent part·

An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at -

. . . . .

(B) any examination of an employee in the unit by a representative of the agency in connection with an investigation if (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and (ii) the employee requests representation.

*See also Internal Revenue Serv. v. Federal Labor Relations Auth.*, 671 F.2d 560, 562–63 (D.C.Cir.1982). Under this provi-

sion, plaintiff had the right to have his union representative present at the March 27 meeting, since it would be reasonable to expect that the misconduct plaintiff was accused of might lead to disciplinary action. Denial of this right is an unfair labor practice, *see* 5 U.S.C. § 7116(a)(8), for which plaintiff could have filed a charge with the FLRA. *See* 5 U.S.C. § 7118(a)(1). Plaintiff's probationary status forecloses neither this right nor plaintiff's right to resort to grievance procedures. *See* 5 U.S.C. § 7103(a)(2). The FLRA has authority to conduct a hearing on the complaint and grant the appropriate relief, *see* 5 U.S.C. § 7118(a)(2), (5)–(8), with ultimate judicial review or enforcement of its final action available in the appropriate United States Court of Appeals. *See* 5 U.S.C. § 7123(a), (b).

Alternatively, since Title VII mandates that grievance procedures be included in collective bargaining agreements, *see* 5 U.S.C. § 7121(a)(1), plaintiff could have asserted his claim through the applicable grievance procedure. Since Title VII defines "grievance" broadly enough to encompass plaintiff's claim that his right to union representation was denied, *see* 5 U.S.C. § 7103(a)(9)(A) (" 'grievance' means any complaint by any employee concerning any matter relating to the employment of the employee."), plaintiff could have used this procedure.[3] Unresolved grievances are submitted to arbitration, *see* 5 U.S.C. § 7121(b)(3)(C), with review of the arbitration award in the FLRA, *see* 5 U.S.C. § 7122(a), and, in cases involving unfair labor practices, in the United States Courts of Appeals. *See* 5 U.S.C. § 7123(a), (b).

Since plaintiff's constitutional claim is indistinguishable from his Title VII claim and the administrative process is fair and capable of providing him with complete relief, the constitutional claim must be dismissed along with the statutory one.[4]

## V.

■ Lastly, defendants have moved to dismiss plaintiff's claim that his dismissal was arbitrary and capricious, arguing that plaintiff's claim is insufficient on the merits. This issue, however, need not be decided because the court lacks jurisdiction to hear the claim.

■ In his complaint, plaintiff bases jurisdiction over this claim on the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. However, plaintiff misconceives the nature of the APA. The APA is not interpreted as a grant of jurisdiction to review agency actions. *See, e.g., Estate of Watson v. Blumenthal*, 586 F.2d 925, 932 (2d Cir. 1978). Jurisdiction must be based on some authority outside of the Act.

■ An alternate basis for jurisdiction might be the federal courts' authority to review decisions of the Merit Systems Protection Board ("MSPB"), since plaintiff appealed his dismissal to the Board pursuant to 5 C.F.R. § 315.806 (1992).[5] However, exclusive jurisdiction to review the MSPB's denial of plaintiff's claim is lodged in the Court of Appeals for the Federal Circuit, except in cases involving discrimination. *See* 5 U.S.C. § 7703(b)(1), (2); 28 U.S.C. § 1295(a)(9). Since plaintiff has not alleged that his dismissal was the product of discrimination, this court has no jurisdiction

---

**3.** Plaintiff asserts that he "was prohibited from seeking relief through the arbitration or grievance procedures under his union agreement." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion at 15. However, plaintiff has neither included a copy of the agreement nor explained why it excludes him from its provisions. As explained in the text, Title VII envisions that such agreements should be broad enough to cover persons such as plaintiff. In any event, even if plaintiff was foreclosed from seeking relief through the grievance procedures he nonetheless could have asserted his claim before the FLRA as an unfair labor practice.

**4.** Plaintiff opposes this part of defendants' motion by explaining that his Fifth Amendment claim is not cognizable before the FLRA, since the FLRA will not grant him a name-clearing hearing but will only evaluate his allegation that he was denied union representation. Since the Fifth Amendment claim has been dismissed, this argument need not be considered.

**5.** 5 C.F.R. § 315.806 gives probationary employees the right to appeal termination decisions to the Merit Systems Protection Board, although only limited issues may be raised on appeal.

over an appeal from the MSPB. Likewise, plaintiff cannot base jurisdiction on the federal courts' authority to review Title VII claims, since he has not pursued his claim in Title VII's administrative processes and federal court review of such claims is available only in the Courts of Appeals.

 The complaint asserts other bases for jurisdiction over a challenge to agency decisionmaking but these are also inadequate. District Court jurisdiction may not be founded on 28 U.S.C. § 1331 when a different court is given exclusive jurisdiction over challenges to agency action. *See, e.g., Estate of Watson, supra,* 586 F.2d at 932. Likewise, plaintiff's attempt to ground jurisdiction in the mandamus statute, 28 U.S.C. § 1361, cannot succeed, since "the extraordinary relief it provides is unavailable when adequate alternative remedies exist." *Wingate v. Harris,* 501 F.Supp. 58 (S.D.N.Y.1980) (Carter, J.). Since, as explained above, the statutory scheme governing plaintiff's claims provided him with a plethora of remedies, the mandamus statute does not provide additional relief.

The court has been unable to discern any basis for jurisdiction over plaintiff's challenge to his dismissal as arbitrary and capricious and this claim must be dismissed.

## CONCLUSION

Accordingly, plaintiff's motion, under Rule 56, F.R.Civ.P., for summary judgment on his Fifth Amendment claim is denied. Defendants' motion, under Rule 12(c), F.R.Civ.P., for judgment on the pleadings is denied. Defendants' motion, under Rule 56, F.R.Civ.P., for summary judgment on all of plaintiff's claims is granted and this action is dismissed.

IT IS SO ORDERED.