955 F.Supp. 194 (1997)
John FEDERICO, Plaintiff,
v.
BOARD OF EDUCATION OF the PUBLIC SCHOOLS OF the TARRYTOWNS, Maureen Barbelet, President of the School Board, Laura Copeland, Mary McGee, Jimmy Warren, Gordon Ferguson, Joseph Lillis and Andre Valdespino, Trustees of the School Board, Donald R. Kusel, Superintendent of Schools, Susan K. Heiferman, Director of Instruction and Personnel, Carol Conklin, Principal of Sleepy Hollow High School, Theresa Waterbury, Assistant Principal, Sleepy Hollow Middle School, and Samuel Ralabate, Chairman Fine Practical and Performing Arts of Sleepy Hollow High School, Defendants.
No. 96 Civ. 3515.
United States District Court, S.D. New York.
January 23, 1997.
*195 *196 *197 Monroe Yale Mann, Port Chester, NY, for Plaintiff.
Marcia B. Paul, Kay Collyer & Boose L.L.P., New York City, Robert Lefland, Tarrytown, NY, for Defendants.

MEMORANDUM DECISION AND ORDER
PARKER, District Judge.
John Federico brings this action pursuant to 42 U.S.C. § 1983 against the Board of Education of the Public Schools of Tarrytowns ("the Board"), the Board's members, and certain officials of the Sleepy Hollow Middle and High Schools ("Sleepy Hollow"). Federico contends that immediately before and after the termination of his employment as a music teacher, several of the individual defendants made defamatory remarks that deprived him of his liberty without due process of law and violated his First Amendment free speech rights and right to assembly. Federico also asserts that the statements constitute defamation under New York state law, a claim over which this Court has supplemental jurisdiction.
Presently before this Court is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendants' motion is granted.

BACKGROUND
In September 1994, John Federico was employed by the public schools of the Tarrytowns School District ("the District") in the Village of North Tarrytown, New York ("the Village") as a first year probationary music teacher. On April 12, 1995, defendant Donald Kusel, the Superintendent of Schools in the Village, notified Federico that at the Board's upcoming meeting he would recommend the termination of Federico's employment. The Board subsequently accepted Kusel's recommendation and, on May 25, 1995, voted not to renew Federico's employment contract for the following school year.
Federico's claims in this action arise out of statements that were made by four of the individual defendants immediately before and after the Board's decision and relate to the reasons for the Board's decision not to renew Federico's employment contract. Those statements, the substance of which defendants do not contest for the purposes of this motion, are as follows.
On April 28, 1995, defendant Carol Conklin, Principal of Sleepy Hollow, in the presence and hearing of approximately sixteen students, stated, "You only see a small piece of the pie. There is a lot about Mr. Federico that you don't know."
On May 26, 1995, defendant Laura Copland, a member of the Board, stated, in the presence of a number of seventh grade students, "If you knew what we know about Mr. Federico, you wouldn't be supporting him, you wouldn't want to be in the same room with him."
Also on May 26, 1995, defendant Theresa Waterbury, Assistant Principal of Sleepy *198 Hollow, in the presence and hearing of student Sandra Texeira, spoke the following words: "Mr. Federico is a liar, he knows all about what he did.... Any student caught talking about Mr. Federico will be suspended on the spot." Later that day, Waterbury, in the presence of a student, stated, "Mr. Federico has done something very wrong that the students would not want to know, and if they knew the reason why, they would have fully agreed with the school board decision."
On May 28, 1995, Kusel, in the presence and hearing of Celeste Buzzeo, the parent of a student, stated, "I kept a second file on Federico.... The only way he could see it is in a court of law.... I wish I could tell you what I know.... He absolutely, without a doubt, should not teach here.... He could get another teaching position ... as long as he learns from his mistakes here."
In June 1995, Federico appealed the Board's decision to terminate his probationary employment to the New York State Department of Education. During that appeal, Federico alleged that the remarks made were slanderous and sought a name-clearing hearing. The Commissioner of Education denied both the appeal and hearing request.
In March 1996, Federico commenced an action against the defendants in the New York Supreme Court, Westchester County. The complaint set forth state law claims of defamation, as well as claims under 42 U.S.C. § 1983 for deprivation of constitutional rights under the Fourteenth and First Amendments. On May 10, 1996 defendants, pursuant to 28 U.S.C. § 1441(b), removed the action to this Court, and shortly thereafter moved to dismiss, pursuant to Rule 12(b)(6), for failure to state a cause of action. In addressing the merits of the motion, the parties submitted documents and exhibits external to the pleadings. Thus, on September 18, 1996, this Court, with the agreement of all parties, converted the motion into one for summary judgment under Fed.R.Civ.P. 56.

DISCUSSION

A. Standard For Summary Judgment
Under Rule 56 of the Federal Rules of Civil Procedure, "a motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); see also Gallo v. Prudential Residential Servs. Ltd., 22 F.3d 1219, 1223 (2d Cir.1994). The burden then shifts to the nonmoving party to come forward with "specific facts, showing that there is a genuine issue of fact for trial," Fed.R.Civ.P. 56(e), by a showing sufficient to establish the existence of every element essential to the party's case, and on which the party will bear the burden of proof at trial. The Court cannot try issues of fact, but can only determine whether there are issues to be tried. Donahue v. Windsor Locks Bd. of Fire Com'rs, 834 F.2d 54, 58 (2d Cir.1987). When making that determination, the Court is to inquire whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
In deciding whether a genuine issue of material fact exists, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989). A genuine issue, however, "is not created by a mere allegation in the pleadings ..., nor by surmise or conjecture on the part of the litigants." United States v. Potamkin Cadillac Corp., 689 F.2d 379, 381 (2d Cir.1982) (citations omitted). Accordingly, a party may not rely on such speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment. Knight v. United States Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

B. Deprivation of Liberty without Due Process
In order to allege a violation of his due process rights, Federico must establish *199 that he has suffered a deprivation of a constitutionally protected liberty interest or property interest. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972), holding limited by Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir.1994). If the interest he asserts is not of a constitutional dimension, then his arguments must fail. Roth, 408 U.S. at 570-71, 92 S.Ct. at 2705-06. Here, Federico does not contend that the statements deprived him of any property interest[1] but alleges instead that he was deprived of a liberty interest without due process as a result of defendants' defamatory statements.
Defamation alone, however, does not constitute a deprivation of a liberty interest protected by the Due Process Clause. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976); Martz v. Incorporated Village of Valley Stream, 22 F.3d 26 (2d Cir.1994). Our Court of Appeals has interpreted Paul to require that some "stigma plus" be established before mere defamation will rise to the level of a constitutional deprivation. Martz, 22 F.3d at 31. That is, the damage arising from the defamation must be accompanied by a significant deprivation of an interest protected by state or federal law, or by an alteration of legal status. See Paul, 424 U.S. at 708-09, 96 S.Ct. at 1164; Valmonte v. Bane, 18 F.3d 992, 1000 (2d Cir.1994). In the context of a state employer's decision not to rehire an employee, that "plus" is established where it deprives the employee of the freedom to take advantage of other employment opportunities without the requisite due process protections. See Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir.1996); O'Neill v. City of Auburn, 23 F.3d 685, 691 (2d Cir.1994); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir.1980). Furthermore, where the statements impinge on the employee's professional competence, stigmatization giving rise to a cause of action requires "something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct." O'Neill, 23 F.3d at 692; Donato, 96 F.3d at 630; Russell v. Hodges, 470 F.2d 212, 217 (2d Cir.1972). The allegations must go to "to the very heart of [the employee's] professional competence, and threaten to damage his professional reputation, significantly impeding his ability to practice his profession." O'Neill, 23 F.3d at 692-93 (citations omitted).
Thus, Federico, in order to succeed at trial, must first prove that his employer published stigmatizing information which is, at least arguably, false, O'Neill, 23 F.3d at 693, and second that, as a result of that stigma, he has been foreclosed from a range of other employment opportunities. Valmonte, 18 F.3d at 999.
Federico contends that defendants' statements have "expose[d] him to public contempt, disgrace, and ridicule" and have impaired his ability to secure a teaching position. The statements, according to Federico, effectively "accus[ed] him of criminal conduct or a loathsome disease" and consequently "besmirched his professional reputation and standing in the community, and his ability to secure future employment." While the allegedly defamatory statements at issue in this case do not actually refer to any "criminal conduct" or "loathsome disease" attributable to Federico, they make vague references to some undisclosed misdeed committed by Federico that justified the Board's termination decision. None of the statements, however, describe with any greater specificity the "very wrong" behavior underlying *200 the Board's decision to terminate Federico.[2]
The statements that have allegedly stigmatized Federico were made in the presence and hearing of students and their parents. Thus, for the purposes of this motion, there is no dispute that the element of publication is satisfied. Additionally, because Federico, though somewhat summarily, has asserted that all four statements are false, the element of arguable falsity is satisfied for the purposes of summary judgment as well. Thus, the remaining questions before this Court are (1) whether each statement had a stigmatizing effect and (2) whether the plaintiff has come forth with any evidence to show that he was foreclosed from future employment. See Valmonte, 18 F.3d at 999.
Generally, a plaintiff raising a due process claim based on allegedly defamatory statements must demonstrate that "he was dismissed amid allegations of dishonest, illegal, or immoral conduct in order to be stigmatized enough to be constitutionally deprived of liberty." Esposito v. Metro-North Commuter R.R., 856 F.Supp. 799, 804 (S.D.N.Y.1994); see Brito v. Diamond, 796 F.Supp. 754 (S.D.N.Y.1992), aff'd, 990 F.2d 1250 (2d Cir.1993). As the tenor and substance of the allegedly defamatory statements vary, each statement will be addressed in turn.
Conklin's April 28 statement to a group of students that "[t]here is a lot about Mr. Federico that you don't know," and Kusel's May 28 statement that Federico "absolutely, without a doubt, should not teach here" but "could get another teaching position ... as long as he learns from his mistakes here" contain no accusations of dishonesty, illegality, or immorality, nor does it call into question Federico's good name, reputation, honor, or integrity. Cf. Valmonte, 18 F.3d at 1000; Roth, 408 U.S. at 573, 92 S.Ct. at 2707. While Kusel's statement could arguably be read as calling into question Federico's professional competence, it also indicates that the behavior or character trait of concern to defendants was a "problem[] within the employee's power to correct," O'Neill, 23 F.3d at 692, and thereby falls beyond the category of statements that go to the "very heart" of that competence. Id. Thus, standing alone, the Conklin and Kusel statements cannot be said to stigmatize Federico and, accordingly, fail to implicate a protected liberty interest.
The remaining two statements, however, are, at least arguably, sufficiently stigmatizing to ground a constitutional claim. The May 26 Copland statement that if the students "knew what [the Board knew] about Mr. Federico," they "wouldn't want to be in the same room with him" might imply, as Federico contends, that he has "committed a criminal act" or is otherwise dangerous to students. Waterbury's May 28 statement that Federico "is a liar" and that he had "done something very wrong," is similarly stigmatizing in so far as it directly brings into question plaintiff's honesty.
As to those two stigmatizing statements, Federico must further prove that because of the stigma, he has been foreclosed from other employment opportunities. Valmonte, 18 F.3d at 999. That is, to recover on his due process claim, plaintiff must demonstrate not only that he has had difficulty finding employment but that such difficulty resulted from the stigma placed upon him by defendants. See Esposito, 856 F.Supp. at 806. Federico has adduced no evidence and has alleged no specific facts setting forth the steps that he has endeavored to take to secure employment since his termination. He simply asserts that the allegedly defamatory statements "have impaired [his] ability to pursue [his] career; since [his] termination [he] has been unable to secure a teaching position." Federico Aff. ¶ 4.
As our Court of Appeals has noted, such conclusory allegations are not enough to raise genuine issues of fact. Potamkin Cadillac, *201 689 F.2d at 381. To avoid summary judgment, enough evidence must favor Federico's case such that a jury could return a verdict in his favor. Id. Federico, having adduced no facts that support his claim that the stigmatizing statements precluded him from future employment, has failed to satisfy that burden. Accordingly, defendants' motion to dismiss the Fourteenth Amendment claim is granted.
Even if this Court were to find that Federico's claim could survive summary judgment, dismissal would be warranted on other grounds. Assuming that Federico has established all of the elements necessary to make out a claim of stigmatization amounting to the deprivation of a liberty interest, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is `an opportunity to refute the charge.'" Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882, 883-84, 51 L.Ed.2d 92 (1977) (quoting Roth, 408 U.S. at 573, 92 S.Ct. at 2707). The rationale behind that remedy is that "in a procedural due process claim, the deprivation by state action of a constitutionally protected interest in `life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).
When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (1) claims based on established state procedures and (2) claims based on random, unauthorized acts by state employees. See Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1915-16, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir.1996).[3] Where the alleged deprivation is based on random, unauthorized acts, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of liberty, "so long as the state provides a meaningful postdeprivation remedy." Hellenic Am. Neighborhood Action Comm. 101 F.3d at 880; Hudson, 468 U.S. at 531, 533, 104 S.Ct. at 3202-03, 3203-04.
Here, the alleged deprivation of a protected liberty interest without due process occurred because of random and arbitrary acts  statements made by various Board of Education members and Sleepy Hollow officials. Federico contends that these statements were so stigmatizing that they deprived him of his liberty interest without due process. He makes no claim that the due process violation was caused by an established state procedure. Thus, Federico's claim can survive only if New York does not provide adequate postdeprivation procedures. Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881.
Our Court of Appeals has held on numerous occasions that an Article 78 proceeding is a "perfectly adequate postdeprivation remedy in [] situations" involving claims of deprivations of liberty or property interests where such deprivations result from random and arbitrary acts of state employees.[4] *202 Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881; see Giglio v. Dunn, 732 F.2d 1133 (2d Cir.), cert. denied, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984); Interboro Inst., Inc. v. Foley, 985 F.2d 90 (2d Cir.1993); Katz v. Klehammer, 902 F.2d 204 (2d Cir.1990); Campo v. New York City Employees' Retirement System, 843 F.2d 96, 103 (2d Cir.), cert. denied, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). Article 78 of the New York Civil Practice Law provides both a hearing and means of redress for petitioners. In an Article 78 proceeding, a petitioner is permitted to submit affidavits and other written proof of their claim, and where a triable issue of fact is raised, the petitioner may obtain a trial. Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881; see Moccio v. New York State Office of Court Admin., 95 F.3d 195, 202 (2d Cir.1996). Constitutional issues, such as those raised by Federico, can be decided in Article 78 proceedings. See Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881; Christ the King Reg. High Sch. v. Culvert, 815 F.2d 219, 224-25 (2d Cir.), cert. denied, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987). Moreover, "an Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit." Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881 (citing Hudson, 468 U.S. at 535, 104 S.Ct. at 3204-05).
Here, Federico appealed the Board decision to the Commissioner of Education, seeking a name-clearing hearing and raising the same defamation claims at issue in the present litigation. That appeal was denied as was the request for a hearing. His proper course of action at that point was to institute an Article 78 proceeding, used to review administrative decisions including those of the Commissioner of Education. Rather than instituting an Article 78 proceeding, however, Federico commenced the instant action in the New York Supreme Court, County of Westchester. Because of the availability of an Article 78 proceeding, Federico was not deprived of a liberty interest without due process of law.

C. First Amendment Claim
Federico further alleges that defendants engaged in a "conspiracy to remove plaintiff from his employment because some members of the defendants, including defendant Ralabate, were fearful that because of plaintiff's popularity and acceptance by his students and their parents, they were fearful that plaintiff might displace defendant Ralabate as Chairman of his Department, and defendants' conduct violated plaintiff's associational and free speech rights as guaranteed by the First Amendment to the United States Constitution." Verified Complaint, ¶ 28. Defendants assert that the given allegation fails to state a claim for relief.
It is well settled that a complaint containing only "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Leon v. Murphy, 988 F.2d 303, 311 (2d Cir.1993). The failure to allege overt acts by conspirators in furtherance of conspiracy, Leon, 988 F.2d at 311, or to allege any acts indicating the existence of a conspiracy, will warrant the dismissal of a claim alleging a conspiracy to violate civil rights. See Polur v. Raffe, 912 F.2d 52, 56 (2d Cir.1990), cert. denied, 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); Zemsky v. City of New York, 821 F.2d 148, 151 (2d Cir.1987), cert. denied, 486 U.S. 1019, 108 S.Ct. 1760, 100 L.Ed.2d 221 (1988); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.), cert. denied, 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).
Here, Federico's allegations of conspiracy are vague and unsupported by description of overt acts. The only factual allegation in the complaint that predates the actual decision to terminate Federico's employment  and therefore the only "overt act" which could be in furtherance of the conspiracy alleged  is Conklin's statement to students *203 that "you see only a small piece of the pie. There's a lot about Mr. Federico that you don't know." Federico's conclusory allegations, supported solely by the Conklin statement, are insufficient to meet the heightened standards required to maintain a claim alleging conspiracy to violate civil rights. Accordingly, defendants' motion to dismiss Federico's First Amendment claims is granted.
The only federal claims against defendants having been dismissed, I decline to exercise jurisdiction over the remaining state-law claims against them. 28 U.S.C. § 1367; see Martz, 22 F.3d at 32; Town of West Hartford v. Operation Rescue, 915 F.2d 92, 104 (2d Cir.1990).

CONCLUSION
Based on the above stated reasons, defendants' motion to dismiss pursuant to Fed. R.Civ.P. 56 is granted. The Clerk of the Court is directed to enter judgment in favor of the defendants.
NOTES
[1] Federico clearly had no property interest in his employment as a teacher with the school district that would trigger the due process requirements of the Fourteenth Amendment. It is well settled under New York law that the services of a probationary teacher may be discontinued at any time during the probationary period, N.Y. Education Law § 3012(1)(a), and dismissal of a probationary teacher will not be set aside unless the teacher shows that a board terminated service for a constitutionally impermissible reason or in violation of a statutory proscription. See Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 629 (2d Cir.1996). Thus, New York law provides no basis for Federico to believe that he had a legitimate claim of entitlement to continued employment as a teacher. Donato, 96 F.3d at 629.
[2] The pleadings, motion papers, and supporting affidavits are similarly silent as to the reason underlying plaintiff's termination. It appears, however, from the Commissioner of Education's decision denying Federico's appeal of his termination that the Board's decision was based on plaintiff's alleged failure to provide lesson plans and unit overview and his failure to start classes on time.
[3] Although Hudson and Parratt dealt with deprivations of a protectable property interest, the Supreme Court has extended the rationale to deprivations of liberty interests as well. See Zinermon v. Burch, 494 U.S. at 132, 110 S.Ct. at 986-87.
[4] Federico, citing Plano v. Baker, 504 F.2d 595 (2d Cir.1974), argues that he need not have availed himself of the Article 78 proceeding because actions brought under 42 U.S.C. § 1983 are "free of the requirements for the exhaustion of state or administrative remedies." Plaintiff's Memo. of Law on Defendants' Motion to Dismiss, at 18. Federico's invocation of the exhaustion doctrine in the present context is inapposite. Generally, plaintiffs with federal or constitutional claims may sue under 42 U.S.C. § 1983 in federal court without first exhausting state judicial or administrative remedies. See Kraebel v. New York City Dep't of Hous. Preservation and Dev., 959 F.2d 395, 404 (2d Cir.), cert. denied, 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992); Monroe v. Pape, 365 U.S. 167, 183 (1961), overruled on other grounds by Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Patsy v. Board of Regents, 457 U.S. 496, 500-01, 102 S.Ct. 2557, 2559-60, 73 L.Ed.2d 172 (1982). Entirely consistent with that general rule is the principle that "there is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." Id. (emphasis in original) (citing Zinermon, 494 U.S. at 115, 110 S.Ct. at 977-78; Parratt, 451 U.S. at 541, 101 S.Ct. at 1916; Hudson, 468 U.S. at 531, 535, 104 S.Ct. at 3202-03, 3204-05).